JAMES SCOTT *vs.* ALEXANDER J. BEVILACQUA.
SAME *vs.* ALEXANDER J. DRINKWATER.

Suffolk.    November 24, 1916. — May 23, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Practice, Civil,* Motion to strike from files agreement for judgment obtained by fraud.

On a motion made by the plaintiff in an action of tort to strike from the files of the court an agreement for judgment and judgment satisfied on the ground that it was obtained by fraud upon a settlement procured by false and fraudulent representations of the defendant, under which the plaintiff had received $350 in cash and a note for $50, and to enter judgment for $2,100 and interest in accordance with an auditor's report, it is not necessary for the plaintiff to return or to offer to return the $350 and the note, because he is entitled to that amount in any event and, if he prevails, he is entitled to more.

Upon the same motion it was *held,* that there was no ground for the contention that the only fraud for which the agreement for judgment would be set aside was fraud in the execution of the instrument.

On the same motion it was *held* that it was not necessary to consider whether the agreement for judgment and judgment satisfied, if it had. been valid, would have operated as an accord and satisfaction, because it was voidable for fraud and had been avoided by striking it from the files rightly.

On the same motion it appeared that the agreement thus procured by fraud was signed in the State of Maine and was filed in court in Boston three days later, and that the motion to strike it from the files was filed two days after that, and it was *held* that there was nothing in a contention of the defendant that the plaintiff had ratified the agreement by not acting promptly on discovering the fraud.

On the same motion the defendant also contended that the plaintiff was guilty of negligence in executing the agreement for judgment, which it appeared was executed in the State of Maine. In support of this argument he relied on the fact that an attorney to whom the plaintiff went in the State of Maine advised

him not to act until he had heard from his Boston lawyer and argued that the plaintiff should not have taken the advice of a second attorney to whom he went in Maine, who advised him to make the settlement; but it was found by the judge who heard the motion, on evidence warranting such a finding, that the advice of the second attorney was based on false representations made by the defendant to the plaintiff that he had settled with the plaintiff's counsel in Boston and had been sent by that counsel to settle with the plaintiff himself, so that the failure of the plaintiff to consult his counsel in Boston was the result of the defendant's fraud and not of the plaintiff's negligence.

A judge of the Superior Court, upon a motion to strike from the files of the court an agreement for judgment and judgment satisfied on the ground that it was obtained by fraud, has the right to hear the motion on the oral testimony of witnesses or on testimony contained in affidavits, or on both, as was done in the present case.

Upon the same motion it was *held* that there was nothing in the contention that the party relying on the agreement for judgment had the right to have the issues of fact upon which the motion depended tried before a jury.

Upon the same motion it appeared that when the plaintiff signed the agreement for judgment he also signed a release under seal of all demands which he had against the defendant, but this release was not set up by the defendant by any pleading as a defence to the action, and the judge ruled that for the purpose of deciding the matter then before him it was not necessary to consider the validity of the release. *Held,* that this ruling was right.

Two ACTIONS OF TORT by the same plaintiff against the same defendant, a constable of the city of Chelsea, the first action for assault and battery committed on January 18, 1915, when making an attachment in the plaintiff's store on Second Street in Chelsea and the second action for malicious prosecution in the Police Court of Chelsea on February 16, 1915. Writs dated respectively February 1 and March 12, 1915.

The proceedings in the Superior Court are described in the opinion. The cases were heard together by *Wait,* J., on motions made in each of the cases by the plaintiff to strike from the files an agreement for judgment and judgment satisfied and to enter judgment in accordance with the auditor's report. The judge granted the motions and made orders to strike the agreements for judgment and judgment satisfied from the files and to enter judgments for the plaintiff in the amounts found by the auditor ($2,000 in the first case and $100 in the second case) with costs. The defendant alleged exceptions, raising the questions stated in the opinion.

*W. A. Lackey,* (*A. L. Altmeyer* with him,) for the defendants.

*S. L. Bailen,* for the plaintiff.

LORING, J. The exceptions now before us were taken at a hearing which resulted in striking from the files of the court an

agreement for judgment and judgment satisfied. Both the above cases were against the same defendant. In the first case he was sued as Bevilacqua otherwise known as Drinkwater and in the second case he was sued as Drinkwater otherwise known as Bevilacqua.

The judge who heard the motions here in question found the following to be the facts: Both cases had been referred to an auditor under an agreement that his findings of fact were to be final. On April 1, 1916, the auditor sent copies of a draft report to both counsel and set April 8 as the day for hearing them before "settling" his report. By his draft report the auditor found for the plaintiff in both actions, in the first in the sum of $2,000 and in the second for $100.

Upon receiving a copy of the draft report his former counsel notified the defendant of the findings there made. Upon receiving this information the defendant asked his counsel "If it wouldn't be a good idea to settle the cases if he could." His counsel told him that it would. Thereupon the defendant took with him one Bursteen (who had been a witness for him at the hearings before the auditor) and went to Keegan a village in the town of Van Buren in the State of Maine where the plaintiff lived. The defendant and Bursteen arrived at Keegan on the afternoon of April 7. On arriving there they went to the plaintiff's house and told him "they had settled with his [the plaintiff's] counsel, Mr. Bailen, and had been sent by Bailen to settle with him." This was false. Neither the defendant nor his counsel had seen Mr. Bailen nor had had any communication with him in the matter. At this time the plaintiff refused to settle the case with the defendant. On the next day, Saturday, April 8, (the day set by the auditor for the hearing to settle his report,) Drinkwater and Bursteen persuaded the plaintiff to go to the town of Van Buren and there consult an attorney. This attorney after conferring with the plaintiff alone advised him "that nothing ought to be done" in the matter until he (the plaintiff) had heard from Mr. Bailen, his Boston attorney. In the words of the judge "they then went to another attorney, Mr. Keegan; and an agreement was finally reached for a settlement on payment of $350 in cash, a note for $50 payable in monthly instalments of $5 and an agreement by Drinkwater (the defendant in both actions) to pay the

charges of Mr. Bailen." The judge found that the plaintiff signed
the agreement of settlement and understood what he was signing.
At the same time he signed a release under seal of all demands
which he had against the defendant. This release had been pre-
pared in Boston. He also signed a receipt for the $350 cash and
the note for $50. In addition he signed an agreement for judg-
ment and judgment satisfied in both actions. Both of these agree-
ments also had been prepared in Boston. He also received from
the defendant an agreement to pay Mr. Bailen's fees. This
agreement had been prepared by the attorney (Keegan by name)
who lived in Van Buren and was the second attorney consulted
by the plaintiff in the State of Maine. Early Monday morning
(April 10) the plaintiff in Maine received a letter from Mr. Bailen
"announcing the decision of the auditor, finally determined on
Saturday, April 8." The defendant's attorney filed the agree-
ments for judgment and judgment satisfied on Tuesday, April 11.
The plaintiff's attorney on finding that they were filed in court
made and filed a motion to have these agreements stricken from
the files. This was done on Thursday, April 13. At the same time
he filed a motion for judgments in favor of the plaintiff in accord-
ance with the auditor's report. The plaintiff did not return the
$350 nor the note for $50 which he received from the defendant
"nor in terms [has he] offered to do so." The judge found that
the agreements for judgment and judgment satisfied were ob-
tained by fraudulent misrepresentation made with an intent to
deceive, that they did deceive the plaintiff and that they were
relied upon by him. He ordered them stricken from the files
and he ordered judgments to be entered in favor of the plaintiff
for the amounts found by the auditor. In addition the judge
"found and ruled 'that for the purpose of this proceeding a de-
termination of the validity of the release is not essential and I
make no finding or ruling thereon.'"

At the hearing the judge heard the testimony of both parties
to the actions now before us and of other witnesses. In addition
"numerous" affidavits were offered by the plaintiff and were re-
ceived and considered by the judge. The defendant took an ex-
ception to the admission of these affidavits. At this hearing the
defendant asked for forty-three rulings. Of these the judge gave
four and the defendant took an exception to the refusal to give

the other thirty-nine. In addition the defendant excepted to the order striking the agreements for judgment and judgment satisfied from the files and to the order directing judgment to be entered for the plaintiff in the amounts found by the auditor and to the ruling that for the purpose of this proceeding a determination of the validity of the release was not essential. The case is here on these exceptions.

The defendant in his argument stated that the rulings of law requested by him are so numerous that he does not address his argument to them but relies upon propositions stated in his brief. For that reason we do not address ourselves to the thirty-nine rulings which were refused.

1. The defendant's first contention is that the plaintiff cannot recover until he has returned the note for $50 and the $350 paid to the plaintiff by him (the defendant). Inasmuch as more than that is due to the plaintiff if his contention is right and both belong to the plaintiff if the defendant is right, it was not necessary to make a return. *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336.

2. The defendant's second contention is that mere fraud in the representations which were used to induce the plaintiff to execute the agreements here in question are not ground for setting them aside; that the only fraud which is ground for setting them aside is fraud in the execution of the instrument. There is nothing in this contention.

3. His next contention is that the agreements for judgment and judgment satisfied operate as an accord and satisfaction. What would have been the legal operation of these agreements if they had not been procured by fraud it is not necessary to consider. As they were procured by fraud they were voidable and have been avoided.

4. His next contention is that the agreements though fraudulent have been ratified. As we understand this contention it is based upon the fact or the supposed fact that the plaintiff did not act promptly on discovering the fraud. There is nothing in this contention. The agreements were made in Maine on Saturday, April 8. They were filed in Boston on Tuesday, April 11, and the motion to have them stricken from the file was filed on Thursday, April 13.

5. His next contention is that the plaintiff was guilty of negligence in executing these agreements. This contention is based upon the fact that the first attorney advised him not to act until he had heard from his Boston lawyer. The defendant contends that in view of this fact he had no right to rely upon the advice given by the second lawyer to whom under the judge's finding "they then went." We are of opinion that the plaintiff was not negligent as matter of law in taking the advice of the second lawyer and that the judge was authorized in finding that that advice was founded and that the plaintiff acted upon the false representation which the defendant made to the plaintiff that he had settled with the plaintiff's counsel in Boston (Mr. Bailen) and "had been sent by Bailen to settle with him."

6. The judge had the right to hear the motion to strike the agreements for judgment from the file on testimony given by witnesses, on affidavits or on both. *Borley* v. *Allison*, 181 Mass. 246. *Soebel* v. *Boston Elevated Railway*, 197 Mass. 46. *Sherman* v. *Collingwood*, 221 Mass. 8. In this connection the defendant has relied upon *Poignand* v. *Smith*, 8 Pick. 272, 277. What was said in that case was said with reference to a trial on the merits and not with reference to a hearing on a motion.

7. The defendant's next contention is that he had a right to have the issues of fact tried before a jury upon which the motion to strike from the files the agreements for judgment and judgment satisfied depended. There is nothing in that contention. In that connection he relies upon *Eastman* v. *Wright*, 6 Pick. 316, 323. That was a case in which the defendant had pleaded a release and to that plea the plaintiff had filed a replication that the release had been obtained by fraud. A motion was thereupon made asking to have the plea stricken out. This the presiding judge refused to do. Thereupon the parties went to trial upon the issue raised by the replication to the plea and, there being no evidence of fraud, the presiding judge instructed the jury to find for the defendant upon that issue. In dealing with that matter the full court decided that the question whether the release was obtained by fraud was a question of fact for the jury. There is nothing in this that helps the defendant. The other two cases relied upon in this connection need not be noticed.

8. The judge was right in ruling that for the purpose of decid-

ing the matter which was before him it was not necessary to consider the validity of the release. The defendant in fact had never set up the affirmative defence of a release. This affirmative defence of a subsequent release is the subject of what at common law was a plea *puis darrein continuance.* As to the defendant's right or rather lack of right to set up the defence of a subsequent release at the stage of the proceedings which these cases had reached, see *Marshall* v. *Merritt,* 13 Allen, 274. In that connection see *Lovejoy* v. *Webber,* 10 Mass. 101. Inasmuch as the defendant had not in fact set up the affirmative defence of the release there was no issue before the court with respect to the validity of it and the judge was right in ruling that for the purpose of the proceeding then before him a determination of the validity of the release was not essential.

9. The matters which the defendant has insisted upon are elementary matters fully established in this Commonwealth and it is not necessary to consider cases in other jurisdictions cited by him.

10. The appeals must be dismissed. *Sherman* v. *Collingwood,* 221 Mass. 8.

11. We are of opinion that the exceptions are frivolous and intended for delay and that for this reason the plaintiff is entitled to double costs and to interest at the rate of twelve per cent per annum from July 8, 1916, the day on which the exceptions were allowed.

The entry must be, appeals dismissed and exceptions overruled with double costs and interest at the rate of twelve per cent per annum from July 8, 1916, and it is

*So ordered.*