UNIVERSAL ADJUSTMENT CORPORATION *vs.* MIDLAND BANK, LIMITED, OF LONDON.

Suffolk.    February 5, 1932. — January 3, 1933.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Practice, Civil,* Parties, Motion to decline jurisdiction, Exceptions, Appeal, Common Law Rule 23 of the Superior Court (1923), Waiver, Brief before Supreme Judicial Court. *Rules of Court. Trustee Process. Jurisdiction. Assignment. Comity. Constitutional Law,* Due process of law, Equal protection of the law, Treaty rights. *Treaty. Pleading, Civil,* Nature of document. *Waiver.*

Under Common Law Rule 23 of the Superior Court (1923), a judge may hear a motion, grounded on facts which are verified by an affidavit, on testimony given by witnesses or on the affidavit, or on both.
Where a plaintiff in an action alleged exceptions to and appealed from an order dismissing the action after hearing of a motion by the de-

fendant that the court decline jurisdiction of the action, the plaintiff's rights were fully protected by the exceptions and the appeal was dismissed as improvident.

At the hearing of a motion by the defendant in an action in the Superior Court that the court decline jurisdiction thereof, it appeared that the plaintiff was a Massachusetts corporation; that the defendant was a bank doing business solely in England and Wales and having no place of business here; that the plaintiff, as the assignee of a corporation organized under the laws of the Empire of Russia and having no place of business here, sought to recover a deposit which had been made by that corporation in the defendant bank previous to the Russian revolution of 1917 and which was payable in London on demand; that the defendant was amply able to respond in damages to the full amount of the deposit and interest; that an adequate remedy was open in the English courts to seek the deposit; that the action was by way of trustee process, under which the plaintiff had secured attachments of funds of the defendant in the hands of trustees in this Commonwealth; that no service had been made on the defendant other than by way of a notice to it; that the organization of the plaintiff here and the assignment to it were for the purpose of bringing the action here; that the validity of the assignment and claims of others to the deposit were in question, and determination thereof involved the laws of the Russian Empire and the laws and decrees of Soviet Russia, which England had recognized but which the United States had not, and also involved the laws of England; that it was doubtful whether, under the English law, satisfaction of a judgment in the action here would protect the defendant *pro tanto* against those found entitled to the deposit by the English courts; that retention of jurisdiction of the action would precipitate many similar actions; and that the avoidance of great expense to the defendant and the courts of this Commonwealth, and an easier and more effective determination of the cause of action, would result from a trial in England. The motion was allowed and the action dismissed. *Held*, that

(1) Although the plaintiff, as an assignee of a transitory, nonnegotiable chose in action, was enabled, by G. L. (Ter. Ed.) c. 231, § 5, to bring the action in its own name, nevertheless all defences which would have been open against its assignor, the Russian corporation, including any defence in the nature of abatement, were available to the defendant in this action;

(2) The general rule, that a resident of a State may resort to its courts as of right to enforce obligations personal to himself against a nonresident, provided jurisdiction over the nonresident can be obtained, was not applicable in the circumstances: the question of the right of the court to assume or to decline jurisdiction was to be decided on the same basis as that on which it would have been decided had the action been brought by the Russian corporation, a foreign corporation, against the defendant, another foreign corporation, neither having a place of business here;

(3) In such circumstances, the parties had a standing in the courts

of this Commonwealth, not as matter of strict right, but only as matter of comity;

(4) The principle of comity applicable was that where, in a broad sense, the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum;

(5) It was within the powers of the Superior Court to determine that it should decline jurisdiction of the action under the doctrine of *forum non conveniens*;

(6) So far as the decision of the trial judge to decline jurisdiction of the action involved the exercise of his discretion, no abuse of discretion appeared;

(7) The allowance of the defendant's motion and the dismissal of the action violated no right of the plaintiff to due process of law and the equal protection of the law under the Constitution of this Commonwealth and the Constitution of the United States;

(8) Assuming that it was open to the plaintiff to invoke rights under a treaty previously made between the United States and the Imperial Russian Government, whereby corporations domiciled in one of the two countries were given "the right to appear before the courts" of the other country, both the words of the treaty and the history of its making showed that its purpose was merely to place such corporations on an equal footing with other corporations in a similar situation, and not to give to Russian corporations greater rights and privileges in courts in the United States than other litigants had; and there was nothing in the treaty inconsistent with the action taken by the trial judge;

(9) There was no error in the allowance of the defendant's motion or in the dismissal of the action.

The defendant's motion in the action above described was entitled "Motion of Defendant . . . that the Court Decline Jurisdiction. . . ." *Held*, that

(1) A contention by the plaintiff, that the defendant should have filed an answer in abatement, was made too late when it was made for the first time in a supplemental brief filed with the trial judge long after the hearing before him had been concluded;

(2) The character of the motion was to be determined from its essential substance and not from its title;

(3) The substance of the motion was adequate to bring the subject to judicial attention.

A statement by an excepting party in his brief in this court, that he "insists upon every exception to the evidence and to the rulings and refusals to rule of the court set forth in the record, although they may not be specifically covered by the argument," did not require this court to deal with exceptions not argued, nor prevent it from treating such exceptions as waived.

CONTRACT. Writ dated August 20, 1930.

A special appearance by the defendant, a motion by it

that the court decline jurisdiction of the action, proceedings with reference to the motion before *Gray*, J., in the Superior Court and findings and rulings by the judge are described in the opinion. The judge ordered the action dismissed. The plaintiff alleged exceptions and also appealed.

*E. R. Anderson & R. B. Owen*, for the plaintiff.

*J. W. Davis* of New York, (*N. W. Bingham, Jr., F. H. Chase, & W. Malcolm* with him,) for the defendant.

RUGG, C.J.  The plaintiff is a Massachusetts corporation. The defendant is an English bank whose principal place of business is London, England, and which carries on business solely in England and Wales. The action is in contract and was begun by trustee writ. The declaration sets out in several counts two causes of action, based on an alleged right to recover large sums of money on deposit in the defendant bank. The plaintiff asserts title to these deposits made in the defendant bank by the Moscow Merchants Bank. It claims title under assignments from two nonresident alien corporations — the Moscow Merchants Bank, a banking corporation organized under the Empire of Russia, and Mokuba, Limited, a corporation organized under the laws of the Republic of Switzerland — both assignments being in a single instrument and executed in the name of each corporation by the same individual. Service of process was made on three Boston banks named as trustees, whose answers disclosed credits due to the defendant. No service was made on the defendant, but an order of notice was issued to it as an absent nonresident defendant. The defendant thereafter appeared specially, without submitting generally to the jurisdiction of the court and solely for the purpose of protecting its interest in the goods, effects and credits in the hands of the trustees attached on the writ. The defendant filed a motion requesting the court to decline jurisdiction and to discharge the attachment, setting out numerous reasons. The motion was supported by affidavit. Summarily stated, those reasons are that the plaintiff claims as assignee of the deposits in the defendant bank, that the deposits were made before the Great War with the defendant in London by a Russian corporation;

that the rights of the original depositor and obligations of the defendant depend upon the law of Russia, and upon the law of England where the deposits were made and are payable, and that the validity of the assignments to the plaintiff depends in part upon the law of Russia as an empire and under its present government; and that the inconvenience of trial of these and other issues in this Commonwealth would impose an undue burden on the defendant and on the courts of this Commonwealth.

When the motion came on for hearing, the plaintiff objected to the introduction of any oral evidence, basing its objection on Common Law Rule 23 of the Superior Court (1923) to the effect that the "court will not hear any motion grounded on facts, unless the facts are verified by affidavit. . . ." The judge overruled this objection on the ground that it had been waived by the action of the plaintiff. This finding was justified by the facts stated. Even apart from waiver, the court had a right to hear the motion on testimony given by witnesses, or on affidavits, or both. *Spaulding* v. *Knight*, 118 Mass. 528. *Manning* v. *Boston Elevated Railway*, 187 Mass. 496, 498. *Scott* v. *Bevilacqua*, 226 Mass. 554.

The defendant conceded at the hearing that the court might retain jurisdiction of the case but contended that in its discretion it had the power and ought to decline to exercise jurisdiction. The trial judge found from the exhibits annexed to the plaintiff's declaration and the oral evidence that the claim in suit was assigned to the plaintiff for the purpose of bringing this action in Massachusetts and that the plaintiff was organized for that purpose. This finding was amply justified. There was evidence tending to show these facts: The articles of organization of the plaintiff were filed and approved by the commissioner of corporations and taxation on July 7, 1930. Its authorized capital stock was one hundred shares of common stock without par value and the incorporators each subscribed for one share. From the "Certificate of Issue of Capital Stock" filed on August 19, 1930, it appeared that at a meeting of the directors held on the previous day it was

voted to issue ninety-seven shares in addition to the amount previously issued, and that these shares were to be paid for by "assignment of balances due from Bank, ninety-seven shares." The exhibits show that the instrument of assignment to the plaintiff was executed on August 14, 1930, in the city of New York. The authority conferred upon the person who executed the assignment to the plaintiff by the vote of the directors of the Moscow Merchants Bank was in the main to effect collection of its deposit. All these circumstances support the finding. See *Miller & Lux, Inc.* v. *East Side Canal & Irrigation Co.* 211 U. S. 293; *Southern Realty Investment Co.* v. *Walker*, 211 U. S. 603. The writ in the case at bar was dated August 20, 1930.

Further findings of fact were in these words: "The fund in question is a deposit made by the Moscow Merchants Bank with the defendant in London prior to the Russian Revolution in 1917 and by the terms of the deposit it was payable in London on demand. The defendant is amply able to respond in damages to the full amount of the fund deposited and interest and an adequate remedy is open in the English courts to those who are legally warranted in acting for the bank. No suggestion to the contrary was made by the plaintiff either by evidence or argument. Of those who assumed to act for the bank in making the transfers to the plaintiff relied on, the one who appears to have been most active is domiciled in England and none of the others resides on this side of the water. One of the chief issues in the trial of the pending action is whether those who assumed to make the assignments under which the plaintiff claims are authorized to act for the Moscow Merchants Bank in any capacity and whether they had the power to make these assignments. A determination of these questions involves consideration of the laws of Imperial Russia and of the laws and decrees of Soviet Russia. England has recognized the Government of Soviet Russia, this country has not. This not only results in the more ready proof of certain material facts in the English courts as compared with ours, but may have a bearing on the substantive law of the case. The English law is that the Mos-

cow Merchants Bank still retains its corporate existence but is in liquidation and although this is challenged by the plaintiff there is respectable authority for the proposition that the Soviet Government is the liquidator. The Soviet Government has filed with the defendant notice that it claims the fund which is the subject matter of this suit. The question of its right to this fund ought not to be decided by this Commonwealth except by necessity, but rather by the courts where the fund is located and where a decision binding upon the whole fund and upon all of the numerous claimants to the fund may be made. Furthermore, it is at least doubtful under the law of England whether a payment of judgment in this action by the defendant could be set off *pro tanto* against those whom the English courts may decide to be entitled to the fund, whether the Soviet Government or any of the numerous parties who have filed claims and demands of various kinds against the fund. [*Martin* v. *Nadel,* [1906] 2 K. B. 26.] A decision of this case in favor of the plaintiff can affect only the funds under attachment and will not be binding in further proceedings for the balance of the plaintiff's claim whether tried in England or elsewhere. It is quite apparent from the English cases cited in argument that this is only one of many similar deposits in English banks and if jurisdiction of this case is retained many similar actions may reasonably be anticipated. No consideration of comity on the facts of this case requires the crowded dockets of the courts of this Commonwealth to make room for such litigation between alien corporations when the parties have available a jurisdiction where their dispute may be more justly and effectively adjudicated."

The trial judge ruled that "for the purpose of determining the question of jurisdiction the case stands as if brought by the foreign corporation which assigned the claim to the plaintiff, on account of the statute under which alone this suit can be maintained in the name of the plaintiff as assignee and which by its terms makes this action subject to all defences to which the defendant would have been entitled had the action been brought in the name of the

assignor," and that under this statute the defendant may plead any defence by way of abatement as well as any defence to the merits to the same extent as if the action had been in the name of the assignor; that as to these proceedings the assignee stands in the shoes of the assignor and is in no better position as to matters raised by the defendant than the assignor would have been if the suit had been brought in the name of the assignor. He further ruled that the question of right to decline jurisdiction must be decided on the basis of this action having been brought by one foreign corporation against another foreign corporation, neither having a place of business in this Commonwealth, and of jurisdiction of the case having been acquired only as the result of finding funds of the defendant subject to trustee process within the Commonwealth. In addition, the transactions which resulted took place in a foreign jurisdiction and any sums of money due on the claim are payable on demand in a foreign jurisdiction. And finally, on all the evidence the finding and ruling was made that jurisdiction of the action ought not to be retained.

The plaintiff filed a bill of exceptions and also an appeal. Its exceptions present in appropriate form for examination every question of law raised at the hearing. Its rights are fully protected by that procedure. The case will be considered on the exceptions alone. The appeal is treated as improvidently taken and is dismissed. *Treasurer & Receiver General* v. *Revere Sugar Refinery,* 247 Mass. 483, 487. *Waltham Bleachery & Dye Works* v. *Clark-Rice Corp.* 274 Mass. 488, 490. *Morrill* v. *Crawford,* 278 Mass. 250, 252. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 158. *Sherman* v. *Werby,* 280 Mass. 157, 161.

According to settled principles of the common law the relation between a depositor and a commercial bank of deposit is that of creditor and debtor. *Carr* v. *National Security Bank,* 107 Mass. 45, 48. *Bachrach* v. *Commissioner of Banks,* 239 Mass. 272, 273. *Foley* v. *Hill,* 2 H. L. Cas. 28, 39–40. The obligation assumed by the defendant toward the Moscow Merchants Bank as a depositor constituted a nonnegotiable chose in action. In the absence

of some enabling statute the assignee in writing of a non-negotiable chose in action cannot, without a new promise running to himself, maintain suit in his own name, but may do so in the name of the assignor. *Leach* v. *Greene,* 116 Mass. 534, 536. An enabling statute is found in G. L. (Ter. Ed.) c. 231, § 5. Thereby it is provided that such assignee may maintain an action "in his own name, but subject to all defences and rights of counter-claim, recoupment or set-off to which the defendant would have been entitled had the action been brought in the name of the assignor." Although a new form of remedy is thus conferred upon the assignee, the substantive rights of the parties as they existed at common law are not affected. The privilege conferred by the statute gives the assignee no greater rights than the assignor had and casts no greater burden upon the debtor against whom the procedure may be instituted. Any defence in the nature of abatement is as available against an assignee as it would have been against the assignor. The assignee is in no better position as to defences, whether of form or substance, than his assignor would be if suing in his own name. The debtor is in no worse condition in an action brought by the assignee in his own name under the statute than he would have been had the assignor brought proceedings in his own right. The only change wrought is that the assignee may now sue in his own name, instead of being compelled to sue in the name of the assignor. The personal disability of the assignor because of being a nonresident is removed. This has been settled as the interpretation of the statute. *Lewis* v. *Club Realty Co.* 264 Mass. 588, 591. *Old Colony Trust Co.* v. *National Non-Theatrical Motion Picture Bureau, Inc.* 274 Mass. 377, 380. *Goldman* v. *Noxon Chemical Products Co.* 274 Mass. 526, 529, and cases cited. Compare *Greene* v. *Hatch,* 12 Mass. 195, 198.

The plaintiff is a domestic corporation with power to purchase choses in action. It is suing in the courts of the sovereign power by which it was created. It is assumed for the purposes of this decision that the plaintiff has acquired title to the chose in action on which the present suit

is founded, that that chose in action is a debt, that action on it is transitory in nature, *Peabody* v. *Hamilton*, 106 Mass. 217, 220, and that service of trustee process on a resident trustee holding funds of the defendant subjects the latter to that extent to the jurisdiction of the court, *Rothschild* v. *Knight*, 176 Mass. 48, 53; *Bayer* v. *Lovelace*, 204 Mass. 327. Nevertheless, it follows from the established scope and effect of the statute (said c. 231, § 5) already set forth, that the plaintiff has no immunity from the defence in the nature of abatement interposed by the defendant. There are cases holding that in general residents of a State may resort to its courts as of right to enforce obligations personal to themselves arising in either tort or contract against nonresidents, provided jurisdiction over them can be obtained. *Peters* v. *Equitable Life Assurance Co.* 196 Mass. 143. *Cressey* v. *Erie Railroad*, 278 Mass. 284, 291. *Gregonis* v. *Philadelphia & Reading Coal & Iron Co.* 235 N. Y. 152. It is not necessary to determine the limits of that doctrine or to state exceptions to its sweep. In any event, it is not applicable where the original cause of action, nonnegotiable in nature, is personal not to the plaintiff but to a nonresident third person who has assigned it to the plaintiff, and the privilege of maintaining a cause of action acquired by assignment is hedged with limitations. The necessary result is that the question of the right of the courts of this Commonwealth to assume or to decline jurisdiction is to be decided on the footing that the cause of action stands the same as if brought by one foreign corporation against another foreign corporation, neither having a place of business within the Commonwealth, where attachment of funds of the latter has been made by trustee process served upon corporations having places of business within the Commonwealth. The motive actuating the assignor and the assignee in making the assignment is immaterial in this connection on the assumptions made in favor of the plaintiff. *South Dakota* v. *North Carolina*, 192 U. S. 286, 310, 311.

The governing principle in such circumstances is that the parties have standing in the courts of this Common-

wealth, not as matter of strict right but only as matter of comity. *Nashua River Paper Co.* v. *Hammermill Paper Co.* 223 Mass. 8, 18. Where it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary inconvenience and expense, and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action, arose and where justice can be done, our courts decline to take jurisdiction on the general ground that the litigation may more appropriately be conducted in a foreign tribunal. Stated succinctly, the principle is that where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum. This is the doctrine of our own decisions. It prevails generally. *National Telephone Manuf. Co.* v. *Du Bois*, 165 Mass. 117, 118. *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.* 233 Mass. 522, 526. *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.* 236 Mass. 185, 193. *Gunter* v. *Arlington Mills,* 271 Mass. 314. *Richards* v. *Security Mutual Life Ins. Co.* 230 Mass. 320. *Halsey* v. *McLean,* 12 Allen, 438. *Canada Malting Co. Ltd.* v. *Paterson Steamships, Ltd.* 285 U. S. 413, 422–423. *Hutchinson* v. *Chase & Gilbert, Inc.* 45 Fed. Rep. (2d) 139. *Disconto Gesellschaft* v. *Umbreit,* 127 Wis. 651; affirmed in 208 U. S. 570. *Great Western Railway* v. *Miller,* 19 Mich. 305. *Severnoe Securities Corp.* v. *London & Lancashire Ins. Co. Ltd.* 255 N. Y. 120. In the English cases the doctrine is well established and is commonly termed *forum non conveniens. Société du Gaz de Paris* v. *Société Anonyme de Navigation "Les Armateurs français,"* [1926] Sess. Cas. (H. L.) 13, 16–23. *Robinson* v. *Robinson,* [1930] Sess. Cas. (H. L.) 20, 24. *Logan* v. *Bank of Scotland,* [1906] 1 K. B. 141. *Egbert* v. *Short,* [1907] 2 Ch. 205. *Matthaei* v. *Galitzin,* L. R. 18 Eq. 340.

This principle is often applied in admiralty. *Charter*

*Shipping Co., Ltd.* v. *Bowring, Jones & Tidy, Ltd.* 281 U. S. 515, and cases cited. *Langnes* v. *Green,* 282 U. S. 531, 544. Kindred reasons have frequently led the United States Supreme Court to invoke it for the protection of interstate commerce from undue interference where causes can more appropriately be conducted in another forum. See cases collected and reviewed in *Cressey* v. *Erie Railroad,* 278 Mass. 284.

There are numerous decisions to the effect that our courts will decline to entertain jurisdiction of proceedings brought by our citizens which involve more or less directly inquiry into the internal concerns of a foreign corporation, notwithstanding service of process upon the defendants. In *Wason* v. *Buzzell,* 181 Mass. 338, the court declined to take jurisdiction of a petition for a writ of mandamus brought by petitioners who alleged that they were two of five directors of a corporation organized under the laws of Maine, authorized to do business within this Commonwealth; that they brought the petition against the corporation, the three remaining directors and two other persons to command the three directors to recognize and act with the petitioners as directors, and the other respondents to refrain from attempting to act as directors, the five individual respondents and the individual petitioners all being residents of the Commonwealth. In *Kimball* v. *St. Louis & San Francisco Railway,* 157 Mass. 7, resident bondholders of a foreign corporation having a usual place of business within the Commonwealth, and five resident directors, brought suit to restrain the corporation from issuing further bonds. The bill was dismissed on the ground that the plaintiffs ought to resort first to the courts of the domicil of the corporation. The underlying basis for these decisions is that the ends of justice may be best accomplished by settling the controversy in the courts of another jurisdiction. The principle has often been declared that courts of this Commonwealth may in their discretion refuse to take jurisdiction of suits directly involving the internal affairs of a foreign corporation. *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400. *Smith* v. *Mutual*

*Life Ins. Co. of New York*, 14 Allen, 336. In *Wright* v. *Post*, 268 Mass. 126, 128, there were numerous resident defendants, although the plaintiffs were nonresidents. It was there stated as settled that our courts "may properly refuse to pass upon a controversy relating in substance to the internal management and control of a foreign corporation, even if individual officers or stockholders are domiciled in Massachusetts." These cases rest upon the same general principle and are but a specific application of it. They show clearly that domestic residence of parties is not decisive in requiring courts to assume jurisdiction of a cause, but that the basis of inquiry will be whether justice can be as well done here as in another jurisdiction to which parties may have access.

The principle manifestly ought to be applied with caution. Generally, under recognized rules of court, where jurisdiction of the person of an alien defendant is obtained or where an alien plaintiff resorts to our courts and secures service on the defendant, the cause of action, although arising in a foreign State, will be considered and adjudicated. *Barrell* v. *Benjamin*, 15 Mass. 354. *Roberts* v. *Knights*, 7 Allen, 449. *Peabody* v. *Hamilton*, 106 Mass. 217. *Johnston* v. *Trade Ins. Co.* 132 Mass. 432. This principle is subject to established limitations and exceptions. The cause of action must be not founded upon a penal statute of a foreign State, nor contrary to the policy of our law, our conceptions of abstract justice, or to pure morals nor calculated to injure the Commonwealth or its citizens; the enforcement of a contract must not "exhibit to the citizens of the state an example pernicious and detestable"; and it must appear that substantial and full justice between the parties can be conveniently and suitably done in accordance with our forms of procedure. If the case falls within any of these limitations and exceptions, the courts are at liberty or may be required to decline to exercise jurisdiction. *Greenwood* v. *Curtis*, 6 Mass. 358, 378. *Higgins* v. *Central New England & Western Railroad*, 155 Mass. 176, 180, and cases collected. *New York Trust Co.* v. *Brewster*, 241 Mass. 155, 158, and cases cited.

When the question is seasonably raised, as it has been in the case at bar, it is necessary to consider and decide whether justice can be done conveniently and suitably between the parties. It has been held that under the Constitution of this Commonwealth superior courts of general jurisdiction have "inherent power to do whatever may be done under the general principles of jurisprudence to insure" to parties to litigation a fair trial, that is to say, a trial likely to accomplish full justice within human limitations. "The possession of such power involves its exercise as a duty whenever public or private interests require." *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162, 179. This statement comprehends within its broad scope the power to determine the question whether the doctrine of *forum non conveniens* ought to be applied in any particular case. Doubtless the determination of this question involves an element of discretion. There is no mathematical formula or hard and fast rule which can be applied as an unvarying gauge to all cases to determine whether to retain or to decline jurisdiction. Judicial discretion is a common term in the law and to it appeal is frequently made. In *Langnes* v. *Green*, 282 U. S. 531, at page 541, it was said with reference to judicial discretion in deciding whether to refuse or to exercise jurisdiction: "When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." That is the rule of our own decisions. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 496–497. *Commonwealth* v. *Gallo*, 275 Mass. 320, 328.

Whether the circumstances of a particular case bring it within the scope of the doctrine of *forum non conveniens* must depend upon a close scrutiny of the relevant facts. Those facts were found and succinctly stated by the trial judge. They have been set forth earlier in this opinion. This being an action at law, findings of fact if supported by any reasonable interpretation of the evidence with all

its legitimate inferences, must stand and be accepted as true. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. It is not necessary to review the evidence. It amply sustains the findings made. So far as they relate to foreign law, they were warranted by the testimony of an English barrister and the decisions of English courts to which he drew attention.

The collective force of these findings, which need not be repeated, demonstrates that the case can be much more easily and effectively tried in England than here, that great and needless expense to the defendant will thus be avoided, and that substantial justice with reference to rights of claimants and proof of foreign law will be much more readily accomplished by a trial in England than here.

No considerations of comity require the courts of this Commonwealth to take jurisdiction of the case in view of all the circumstances. In determining whether to entertain jurisdiction of a cause as matter of comity, courts undertake to recognize a state of friendliness and reciprocal desire to do justice existing between nations and between the several States of the Union. "It is not the comity of the courts, but the comity of the nation which is administered, and ascertained in the same way, and guided by the same reasoning by which all other principles of municipal law are ascertained." *Bank of Augusta* v. *Earle*, 13 Pet. 519, 589. *Sliosberg* v. *New York Life Ins. Co.* 244 N. Y. 482, 492. *Loucks* v. *Standard Oil Co. of New York*, 224 N. Y. 99, 111. See *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 213.

Whether courts will entertain an action on grounds of comity is subject to the principle of *forum non conveniens.* If justice according to that doctrine cannot be afforded, no rule of international comity requires a court to entertain jurisdiction over a cause of action. Recognition of comity is dependent upon international duty, upon convenience of parties to the litigation, and upon broad considerations of justice. It is not a matter of strict obligation. It is not defined and fixed by rigid rules. That limitation upon international comity is implicit in the statement of its scope

and effect. *Hilton* v. *Guyot,* 159 U. S. 113, 163–164. *Bond* v. *Hume,* 243 U. S. 15, 21–22. *Perkins* v. *Perkins,* 225 Mass. 82, 86.

The circumstances that our courts are overcrowded and that entertaining this action may invite other similar litigation, all to the delay of citizen litigants and to the great expense of the treasury of the Commonwealth, are entitled to some weight in combination with all the other factors in determining whether comity requires that jurisdiction of this action be retained. *Douglas* v. *New York, New Haven & Hartford Railroad,* 279 U. S. 377, 387. *Cuba Railroad* v. *Crosby,* 222 U. S. 473, 480. *Heine* v. *New York Life Ins. Co.* 50 Fed. Rep. (2d) 382, 387.

The determination of the trial judge not to retain jurisdiction of the case at bar, so far as it involved an element of discretion, is not open to criticism. The decision was right in view of the facts. The contract here in suit was made in England. Its nature, validity, obligation and legal incidents are governed by the law of that country. *Carnegie* v. *Morrison,* 2 Met. 381, 397. *Carmen* v. *Higginson,* 245 Mass. 511, 516. *Lennon* v. *Cohen,* 264 Mass. 414, 425. One further factor only need be emphasized. It is manifest that one of the chief issues likely to arise at a trial of the pending cause will be the validity of the assignments under which the plaintiff asserts title to the deposits in the defendant in the name of the Moscow Merchants Bank. Those assignments, copies of which are annexed to the plaintiff's declaration, were executed, the one from the Moscow Merchants Bank to the Mokuba, Limited, on October 2, 1928, and that from the two last named corporations to the plaintiff on August 14, 1930. It was found by the trial judge that according to English law "the Moscow Merchants Bank still retains its corporate existence, but is in liquidation, and, although this is challenged by the plaintiff, there is respectable authority for the proposition that the Soviet Government is the liquidator." That finding was exactly supported by testimony. See, also, *Russian Commercial & Industrial Bank* v. *Comptoir d'Escompte de Mulhouse,* [1925] A. C. 112; *Employers' Liability*

*Assurance Corp. Ltd.* v. *Sedgwick Collins & Co. Ltd.* [1927] A. C. 95; *Compagnie des Manufactures Woronin, Luetscheg et Cheshire* v. *Frederick Huth & Co.*, a case decided in the King's Bench Division of England but according to our information reported only in 55 Journal du Droit International, 756. Since the hearing and decision in the Superior Court two pertinent adjudications have been made, viz., *Lazard Brothers & Co.* v. *Banque Industrielle de Moscou*, [1932] 1 K. B. 617; *S. C.* in House of Lords *sub nomine Lazard Brothers & Co. Ltd.* v. *Midland Bank, Ltd.* 49 T. L. R. 94, and *Russian & English Bank* v. *Baring Brothers & Co. Ltd.* [1932] 1 Ch. 435. Whether these decisions may affect the accuracy of this finding is not now material and need not be considered. They interpret decrees of the Soviet government (apparently not hitherto made available to English courts) to the effect that Russian corporations like the Moscow Merchants Bank were dissolved and ceased to exist long before the execution of the assignments on which the plaintiff must rely ultimately to sustain its case. Those decisions seemingly indicate a view that a corporation dissolved by act of the government of its domicil cannot rightly be treated, by courts of a foreign nation, as thereafter continuing its corporate existence, and that this principle applies to Soviet Russia in its relation to corporations established under the Imperial Russian Government. See also *Luther* v. *James Sagor & Co.* [1921] 3 K. B. 532; *Perry* v. *Equitable Life Assurance Society*, 45 T. L. R. 468. Those decisions, without further analysis, at least show in connection with other English cases the difficulties of ascertaining the law of Soviet Russia, even in a country which has recognized that government. Plainly, such difficulties would be magnified and aggravated in a country like ours, which has not recognized that government. Those decisions tend strongly to confirm the view that the trial of the present case ought not to be held by our courts, but can more suitably and conveniently be held in the jurisdiction according to whose law the rights and obligations of the defendant with respect to the deposits are to be determined, where the deposits were originally made and are payable,

where their present owner can best be ascertained, and where the defendant is domiciled and does business.

Refusal to entertain jurisdiction to try on its merits the case at bar violates no rights of the plaintiff secured by the Constitution of this Commonwealth. That instrument in arts. 1, 10, 11, 12 and 29 of the Declaration of Rights contains extensive and ample guaranty of the right to resort to the courts on equal terms with others for the redress of wrongs and for the protection of property, person, and character, in conformity to equal laws impartially administered and enforced. That guaranty is at least as broad and inclusive as the similar guaranty in the Constitution of the United States. "Equal protection of the laws in its constitutional sense implies that all litigants similarly situated may appeal to the courts both for relief and for defence under like conditions and with like protection and without discrimination." *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.* 236 Mass. 185, 194. The constitutional mandate to maintain equality before the law and equal laws rests upon the judicial department of government with as much force as upon the other departments. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 125. That right has always been sedulously protected. *Opinion of the Justices,* 211 Mass. 618. *Bogni* v. *Perotti,* 224 Mass. 152. *Edwards* v. *Cockburn,* 257 Mass. 153, 157. *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 337–341. *Cressey* v. *Erie Railroad,* 278 Mass. 284, 291, 292, 293. There is no violation of that guaranty in the principles here followed in reaching the decision not to retain jurisdiction of this cause. The plaintiff has been fully heard on that issue. General rules of law have been invoked. They have been applied with impartiality and equality. They have long been recognized and put in practice in this Commonwealth, in numerous other common law jurisdictions, and in the Supreme Court of the United States, as is demonstrated by the authorities hereinbefore cited and reviewed. They are none the less general and equal because cases do not frequently arise falling within their scope and sanction. No

discriminatory rule has been followed, but one affecting equally every litigant similarly situated. It bears upon citizens and aliens alike. *Richards* v. *Security Mutual Life Ins. Co.* 230 Mass. 320. *Rackemann* v. *Taylor,* 204 Mass. 394. *Wason* v. *Buzzell,* 181 Mass. 338. Reasonable classification has always been regarded as the prerogative of the legislative department of government in enacting laws. *Holcombe* v. *Creamer,* 231 Mass. 99, where numerous cases are reviewed. *Columbus & Greenville Railway* v. *Miller,* 283 U. S. 96, 101, 102. Similar flexibility is permissible with respect to general principles of law when applied by the courts with uniformity.

The plaintiff contends that by the conclusion we have reached it has been deprived of the right to due process of law and the equal protection of the laws secured to it by the Fourteenth Amendment to the Constitution of the United States. Whether the plaintiff is an alien or a citizen, a corporation or an individual, it may invoke the rights established by this part of the Constitution of the United States. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369. *Kentucky Finance Corp.* v. *Paramount Auto Exchange Corp.* 262 U. S. 544, 550. *Louis K. Liggett Co.* v. *Baldridge,* 278 U. S. 105, 111. It is manifest that there has been no violation of the due process clause. *Missouri Pacific Railroad* v. *Clarendon Boat Oar Co. Inc.* 257 U. S. 533, 535–536. The meaning of the guaranty as to equal protection of the laws is stated in *Truax* v. *Corrigan,* 257 U. S. 312, at pages 332–333, in these words: "The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other. It sought an equality of treatment of all persons, even though all enjoyed the protection of due process. Mr. Justice Field, delivering the opinion of this court in *Barbier* v. *Connolly,* 113 U. S. 27, 32, of the equality clause, said — 'Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.' In *Hayes* v. *Mis-*

*souri*, 120 U. S. 68, the court speaking through the same Justice said the Fourteenth Amendment 'does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.' Thus the guaranty was intended to secure equality of protection not only for all but against all similarly situated. Indeed, protection is not protection unless it does so. Immunity granted to a class, however limited, having the effect to deprive another class, however limited, of a personal or property right, is just as clearly a denial of equal protection of the laws to the latter class as if the immunity were in favor of, or the deprivation of right permitted worked against, a larger class.'' We think that there is no violation of the guaranty as thus interpreted by the conclusion here reached. That which has been said with reference to the Constitution of this Commonwealth is equally pertinent here. The principles on which this decision rests are general in their sweep; they impinge alike upon corporation and individual, alien and citizen. The question to be determined in every case is whether citizens, aliens, nonresidents, or corporations are singled out for special hostile or favorable discrimination. It appears plain to us that the decision here made involves no such discrimination. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 125-126. As bearing upon this point, it has been said that "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." *Douglas* v. *New York, New Haven & Hartford Railroad*, 279 U. S. 377, 387. *Cuba Railroad* v. *Crosby*, 222 U. S. 473, 480. *Canadian Northern Railway* v. *Eggen*, 252 U. S. 553, 562. *Heine* v. *New York Life Ins. Co.* 50 Fed. Rep. (2d) 382, 387.

The plaintiff contends that under rights secured by treaty the Moscow Merchants Bank has a special right to maintain this action and that therefore the plaintiff, itself stand-

ing in the shoes of its assignor, has a like right.  By treaty between the United States of America and the Imperial Russian Government signed June 25/12, 1904, ratified by the President on June 7, 1909, pursuant to advice by the Senate given on May 6, 1909, and proclaimed on June 15, 1909, it was provided that "Corporations or Stock Companies, and other industrial or financial commercial organizations, domiciled in one of the two countries, and on the condition that they have been regularly organized in conformity to the laws in force in that country, shall be recognized as having a legal existence in the other country, and shall have therein especially the right to appear before the courts, whether for the purpose of bringing an action or of defending themselves against one."  36 U. S. Sts. at Large, Part 2, 2163–2164.  A letter from the Department of State was in evidence to the effect that "The Government of the United States has taken no action to abrogate this Agreement.  The Agreement was not denounced by either the Imperial or the Provisional Government of Russia, the latter being the last Government of Russia recognized by the Government of the United States."  It is matter of common knowledge that both these Russian Governments have been overthrown and that that country now is in fact being ruled by the Soviet.  *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149, 156–157.  It is assumed in favor of the plaintiff, but without so deciding, that the plaintiff may invoke whatever rights the treaty with the Imperial Russian Government to which reference has been made purports to secure to it.

Treaties made by the United States are "the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."  Art. 6 of the Constitution of the United States.  Since this contention of the plaintiff involves the construction of a treaty, resort must be had for the governing principles touching the construction and effect of treaties to decisions of the Supreme Court of the United States, which are controlling in this field.  The general rules for the interpretation of treaties

have been frequently stated. "It is a rule, in construing treaties as well as laws, to give a sensible meaning to all their provisions if that be practicable." *Geofroy* v. *Riggs,* 133 U. S. 258, 270. Treaties like other contracts "are to be read in the light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the States thereby contracting." *Rocca* v. *Thompson,* 223 U. S. 317, 331–332. The language of a treaty, however, is not to be given a strained construction or an unreasonable interpretation in order to vouchsafe to aliens rights and privileges denied to citizens. *Chryssikos* v. *Demarco,* 134 Md. 533, 535. *Rocca* v. *Thompson,* 157 Cal. 552. It was said in *Nielsen* v. *Johnson,* 279 U. S. 47, 51–52: "Treaties are to be liberally construed so as to effect the apparent intention of the parties. *Jordan* v. *Tashiro,* 278 U. S. 123; *Geofroy* v. *Riggs,* 133 U. S. 258, 271; *In re Ross,* 140 U. S. 453, 475; *Tucker* v. *Alexandroff,* 183 U. S. 424, 437. When a treaty provision fairly admits of two constructions, one restricting, the other enlarging rights which may be claimed under it, the more liberal interpretation is to be preferred, *Asakura* v. *Seattle,* 265 U. S. 332; *Tucker* v. *Alexandroff, supra; Geofroy* v. *Riggs, supra,* and as the treaty-making power is independent of and superior to the legislative power of the states, the meaning of treaty provisions so construed is not restricted by any necessity of avoiding possible conflict with state legislation and when so ascertained must prevail over inconsistent state enactments. See *Ware* v. *Hylton,* 3 Dall. 199; *Jordan* v. *Tashiro, supra;* cf. *Cheung Sum Shee* v. *Nagle,* 268 U. S. 336. When their meaning is uncertain, recourse may be had to the negotiations and diplomatic correspondence of the contracting parties relating to the subject matter and to their own practical construction of it. Cf. *In re Ross, supra,* at 467; *United States* v. *Texas,* 162 U. S. 1, 23; *Kinkead* v. *United States,* 150 U. S. 483, 486; *Terrace* v. *Thompson,* 263 U. S. 197, 223."

The words of the treaty here invoked give to corporations domiciled in one of the two countries "the right to appear before the courts" of the other country. This ex-

pression in its common significance naturally confers no superior privileges upon the alien corporation above other suitors who are allowed by the laws of each contracting nation to appear in its courts either as plaintiffs or as defendants. The crucial words in their natural meaning import that such corporations shall have a right to appear upon equal terms with others in like situation. They convey no mandate concerning what the courts must do after the appearance. They do not specify the law to be invoked or the procedure to be followed. The purpose of the treaty does not appear to be to secure to the alien corporation rights to sue in the courts of the other country regardless of the reasonable ·rules and regulations in conformity to which all litigation must be conducted by aliens and citizens alike. *Todok* v. *Union State Bank of Harvard, Nebraska,* 281 U. S. 449, 455. The words of the treaty can hardly be so strained as to confer upon Russian corporations the right to sue in all courts in this country without payment of the usual fees and without observing all other general laws and rules of court binding upon citizens and all other aliens. Their rights to sue are governed by settled practice and procedure so long as not unequal or unjustly discriminatory. The right to appear in courts implies a right to prosecute or defend a cause of action upon the same terms accorded to others. Such appearance must be subject to decision by the courts upon the general principles of law by which they are guided in deciding causes presented through the appearance of other parties equally favored. The nations entering into the treaty were content to leave the adjustment of whatever controversies might be engendered through the appearance of a Russian corporation in the courts of this country to the ample guaranties for impartial trial and just treatment secured to all litigants by the Federal Constitution and the general principles of fairness which characterize our system of law. As already has been pointed out, every privilege guaranteed by the Fourteenth Amendment to the Federal Constitution has been observed with respect to the right of the plaintiff and its assignor to appear in court and present its contentions. It has been given the

ample protection afforded by arts. 1, 10, 11, 12, 29 and 30 of the Declaration of Rights of the Constitution of this Commonwealth.  The plaintiff has simply been required to meet a defence in the nature of abatement to its cause of action, which every other plaintiff, alien or citizen, would be required to meet.  Its contentions have been decided according to general principles of law governing the rights of all litigants similarly situated.

The construction of the treaty for which the plaintiff contends would give to Russian corporations who appear in our courts greater rights and privileges than are accorded to other litigants in numerous particulars.  (1) It would exonerate them from the rule of *forum non conveniens*, applicable to all other parties to suits, including individual citizens of Russia.  (2) It would give to them greater privileges than are possessed by corporations of sister States of the Union, which always are held subject to that rule.  (3) It would enable them to require American courts at their insistence to adjudicate concerning the internal relations of a foreign corporation.  (4) It would encroach upon the power of the Commonwealth to determine rules of jurisdiction for the courts and to provide for the decision of all cases in the courts according to equal laws and without discrimination.  (5) It would coerce the courts of the Commonwealth to recognize particular and exclusive privileges, possessed by Russian corporations and denied to others, in contravention of the mandate of art. 6 of the Declaration of Rights.  In all these particulars and perhaps in others the construction of the treaty urged by the plaintiff would override settled principles of our jurisprudence.

In our opinion the words of the treaty cannot rightly be construed to reach any such result.  We are unable to discern in the treaty anything at all inconsistent with the decision to decline jurisdiction of the case at bar.  On the contrary, we think that the words and scope of the treaty leave unimpaired and in full force the law of this Commonwealth authorizing our courts to refuse to take jurisdiction to try the case at bar on its merits.

Our investigations of official publications of the United

States throw no light upon the negotiations preceding the treaty. The brief of learned counsel for the defendant states that they have not been able to find anything on that subject. The plaintiff relies wholly upon this treaty. The fact is pertinent as bearing upon the object of the treaty that, previously, according to the law of Russia, corporations established by foreign nations had very limited rights in its courts. It was held in a decision of the highest court of Imperial Russia that "the right of legal protection (enforcing its civil rights) in Russia as plaintiff before the courts may be enjoyed by legally chartered stock companies and corporations of only those foreign States with whom Russia has concluded on the basis of reciprocity special conventions on the subject." *Petition of Alexander Krivtzov, Attorney for the Southwestern Railroads*, Decisions of the Civil Cassation Department of the Ruling Senate, 1883, No. 44, pages 198–201.* The Department of State has furnished information to the effect that its records show that the United States took the initiative in negotiating the treaty of 1909, and that the Russian government stated that it had "no objection to giving corporations organized under laws of the United States the right to sue in Russian Courts." It is assumed that judicial notice may be taken of this information. *Jones* v. *United States*, 137 U. S. 202, 216. *Underhill* v. *Hernandez*, 168 U. S. 250, 253. In view of the Russian law previous to the treaty, the design of the treaty seemingly was not to give to corporations of the one nation suing in the courts of the other any preference above other litigants in the application of general principles of law, but simply to enable them to appeal to the courts upon equal terms with other suitors. So far as it goes, this factor tends to confirm that which appears to us the clear import of the words of the treaty standing alone.

The point that the defendant had not chosen the proper

---

* Translation of above decision from its reports of the Ruling Senate of Russia has been provided through the courtesy of the staff of the Library of the Harvard Law School. The case was cited by the defendant and in part translated in its brief. G. L. (Ter. Ed.) c. 233, § 70. *Richards* v. *Richards*, 270 Mass. 113. *Seemann* v. *Eneix*, 272 Mass. 189.

pleading to raise the questions upon which it relied, but should have filed an answer in abatement, was not raised in requests for rulings filed at the end of the evidence, nor in oral argument, nor in a brief then submitted, but was first suggested in a supplemental brief filed long after the hearing before the trial judge had been concluded. That was too late. The title of the paper filed was "Motion of Defendant . . . that the Court Decline Jurisdiction. . . ." Without determining whether as matter of strict pleading a motion was correct (see *Day* v. *McClellan,* 236 Mass. 330; *Paraboschi* v. *Shaw,* 258 Mass. 531, 532; *Bath Iron Works, Ltd.* v. *Savage,* 262 Mass. 123, 127; compare as to equity practice *Rothstein* v. *Commissioner of Banks,* 258 Mass. 196), it is enough to say that the character of a pleading or other paper filed in a cause is to be determined from its essential substance and not from its descriptive title or name. *E. S. Parks Shellac Co.* v. *Jones,* 265 Mass. 108, 110. *Brotkin* v. *Feinberg,* 265 Mass. 295, 298–299. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147. *Kingsley* v. *Fall River,* 280 Mass. 395, 398. The substance of the motion was adequate to bring the subject to judicial attention.

All the arguments presented in behalf of the plaintiff have been considered and determined, but they need not be further elaborated. At the conclusion of its brief the plaintiff "insists upon every exception to the evidence and to the rulings and refusals to rule of the court set forth in the record, although they may not be specifically covered by the argument." This court cannot be thus required to deal with exceptions not argued. They are treated as waived. This court will exercise its power to correct material and substantial errors of law in appropriate instances, but commonly will not discuss those not seriously argued. *Commonwealth* v. *Dyer,* 243 Mass. 472, 508. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 247 Mass. 334, 346. *Silverman* v. *Rothfarb,* 247 Mass. 456. *Barnes* v. *Springfield,* 268 Mass. 497, 504. *Mullen* v. *Board of Sewer Commissioners of Milton,* 280 Mass. 531, 537.

*Appeal dismissed.*
*Exceptions overruled.*