FRED C. JOHNSON v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

October 15, 1954.

No. 36,355.

[1]Reported in 66 N. W. (2d) 763.

*Davis, Rerat, Yaeger & Lush, Eugene A. Rerat,* and *Harry H. Peterson* and *Edward B. Henslee* and *Paul F. Clements,* of counsel, for appellant.

*Harry S. Stearns, Jr.,* and *John L. Rice, Carl W. Krohl,* and *Andrew C. Scott,* of counsel, for respondent.

KNUTSON, JUSTICE.

The facts in this case may be briefly stated. Plaintiff is a citizen of the state of Nebraska and resides at South Sioux City, Nebraska. Defendant is a railway corporation organized and incorporated under the laws of the state of Illinois, having its principal place of business in Chicago in that state. It conducts and operates a railroad business in Minnesota, Wisconsin, Illinois, Iowa, Nebraska, and other states.

Plaintiff commenced this action in the district court of Washington county, in the nineteenth judicial district of the state of Minnesota, to recover damages for injuries alleged to have been sustained while he was employed as a conductor on a train operating through the railroad yards at Ashland, Nebraska. The action was brought under the federal employers' liability act (referred to hereinafter as F.E.L.A.) (35 Stat. 65, as amended, 45 USCA, §§ 51 to 60).

Defendant thereupon moved the court to dismiss the action on the ground of *forum non conveniens* and other grounds. In support of its motion, defendant's affidavit states:

"* * * If this suit is to be tried in this Court, it will be necessary to obtain a large number of witnesses from the vicinity of Ashland, Nebraska, and South Sioux City, Nebraska, to cover the condition of defendant's track, the condition of its train and cars and the result of the inspection of equipment both before and after the accident, with medical testimony covering treatment and examination of the

plaintiff. It is affiant's contention that it will require at least four employee witnesses from the vicinity of Ashland, Nebraska, and four employee witnesses from South Sioux City, Nebraska, as well as one medical witness from Ashland, Nebraska, and two from the vicinity of South Sioux City, Nebraska.

\* \* \* \* \*

"The occurrence involved in this litigation took place at Ashland, Nebraska, which is approximately 900 miles distant on defendant's railroad from Stillwater, Minnesota, requiring from 24 to 36 hours traveling time in each direction or a distance of approximately 400 miles by the closest foreign line route or 15 hours of travel in each direction, in both instances requiring three days attendance at the trial for each witness and would entail heavy expense for travel, time lost, witness fees and payments for substitutes to take the place of the witnesses during their absence.

"As against a trial of this cause of action in the State of Nebraska, near the residence of plaintiff or the case of the occurrence, it is affiant's opinion that it would cost this defendant at least an additional $2,000 to try the case in Stillwater, Minnesota, in view of the expense, time lost, witness fees and incidentals growing out of a trial over 400 miles distant from the point of the accident, and would seriously interfere with defendant properly defending this case on its merits."

In another affidavit, defendant alleges that the accident happened in Saunders county, Nebraska, the county seat of which is Wahoo, Nebraska; that the district courts of the state of Nebraska are courts of general jurisdiction in that state and have jurisdiction of the cause of action pleaded by plaintiff; that the district court of Dakota county, Nebraska, sits at Dakota City, Nebraska, and the next jury term thereof would convene in January 1954; that the district court of Saunders county, Nebraska, sits at Wahoo, Nebraska, and the next term of that court in which there is a jury convenes on September 29, 1953, and the next jury term thereafter during the month of January 1954; also that Dakota county, Nebraska, is within the territory embraced by the district court of the United

States for the district of Nebraska, Omaha division, and that the next term of that court would be held at Omaha, Nebraska, on September 28, 1953, and the next term thereafter in April 1954; also that Saunders county is within the territory embraced by the district court of the United States for the district of Nebraska, Lincoln division, and that the next term of that court would be held at Lincoln, Nebraska, on the first Monday of October 1953 and again thereafter in May 1954.

None of these allegations are controverted by plaintiff's counter-affidavit. Based thereon, the trial court granted defendant's motion to dismiss without prejudice on the ground of *forum non conveniens*. Judgment was entered dismissing the action without prejudice, and this appeal is from such judgment.

Principally, plaintiff claims that the doctrine of *forum non conveniens* is inapplicable in Minnesota in cases of this kind.

It is plaintiff's contention (1) that U. S. Const. art. IV, § 2, imposes upon the courts of Minnesota the mandatory duty to hear and decide cases brought by nonresidents under the F. E. L. A. because Minnesota entertains jurisdiction of similar actions brought by its own citizens; (2) that by virtue of the provisions of Minn. Const. art. 1, § 8, the courts of Minnesota are under the mandatory duty of entertaining actions brought by citizens thereof under the F. E. L. A.; (3) that under Minn. Const. art. 10, § 1, and Rule 4.03 (c) of the Rules of Civil Procedure the courts of Minnesota not only have jurisdiction over foreign railroads in cases brought by nonresident plaintiffs but also are bound to entertain jurisdiction of cases brought by nonresident plaintiffs against nonresident railroad corporations doing business in the state; (4) that the provisions of U. S. Const. art. IV, § 2; of 35 Stat. 66, as amended 45 USCA, § 56, and 28 USCA, § 1445 (a) ; of Minn. Const. art. 1, § 8; and of Rule 4.03 (c) of the Rules of Civil Procedure, compelling the courts of Minnesota to exercise jurisdiction in F. E. L. A. cases, render inoperative the doctrine of *forum non conveniens* by the courts of this state in F. E. L. A. cases; and (5) that 28 USCA, § 1404 (a), does not render applicable in state courts the doctrine of

*forum non conveniens* even though it does so in the federal courts.

We think that these contentions can be simplified and that the questions presented for our decision are three in number:

(1) Does the federal constitution or federal law prohibit the application of the doctrine of *forum non conveniens* in actions brought under the F. E. L. A.?

(2) Does the Minnesota constitution prohibit the application of the doctrine of *forum non conveniens?*

(3) Do Minnesota decisions prevent the application of the doctrine and, if so, should they any longer be adhered to?

This case was argued together with the case of Millen v. Great Northern Ry. Co., the decision in which is filed with this decision. The decisive questions on the merits are the same in both cases, and, as far as they are considered to be important, we shall attempt to answer the contentions of counsel in both cases in this decision.

At the outset, certain things can be admitted. That the court has jurisdiction over the cases involved is not open to dispute. The only question is whether the court may decline to exercise such jurisdiction.

■ The rule of *forum non conveniens* is an equitable rule[2] based on the proposition that a court in its discretion may decline to exercise jurisdiction over a transitory cause of action when it appears that the action may more equitably be tried in some other available and competent court. In Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 507, 67 S. Ct. 839, 842, 91 L. ed. 1055, 1062, the court said:

"The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes

[2]For a further study of the problem and its applicability to cases such as are now before us, see Dainow, *The Inappropriate Forum,* 29 Ill. L. Rev. 867; Foster, *Place of Trial,* 44 Harv. L. Rev. 41; Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law,* 29 Col. L. Rev. 1; *Forum Non Conveniens, A New Federal Doctrine,* 56 Yale L. J. 1234; Barrett, *The Doctrine of Forum Non Conveniens,* 35 Calif. L. Rev. 380; 15 Minn. L. Rev. 83; 32 Minn. L. Rev. 633; Annotation, 158 A. L. R. 1022.

are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

"Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice. The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it."

Whatever may have been the former rule, since the decision by the United States Supreme Court in Missouri ex rel. Southern Ry. Co. v. Mayfield, 340 U. S. 1, 71 S. Ct. 1, 95 L. ed. 3, there can be no longer any doubt that the states are left free to adopt or reject the doctrine of *forum non conveniens* as far as federal law is concerned as long as they treat citizens of their own state who are nonresidents on the same basis as they treat noncitizens who are nonresidents. In that case plaintiff was a resident outside the state of Missouri. Defendant carrier was a foreign corporation, and the accident which gave rise to the cause of action took place outside Missouri. The doctrine of *forum non conveniens* was invoked, and the Missouri trial court denied a motion to dismiss. The supreme court of Missouri refused to compel the trial court by mandamus to exercise its discretion. The decision of the United States Supreme Court, which is decisive of the point raised here, held (340 U. S. 3, 71 S. Ct. 2, 95 L. ed. 7):

"A decision by the highest court of a State determining that the doctrine of *forum non conveniens* cannot bar an action based on the Federal Employers' Liability Act, in the circumstances before us, may rest on one of three theories. (1) According to its own notions

of procedural policy, a State may reject, *as it may accept,* the doctrine for all causes of action begun in its courts. If denial of a motion to dismiss an action under the Federal Employers' Liability Act is rested on such a general local practice, no federal issue comes into play. (It is assumed of course that the State has acquired jurisdiction over the defendant.) (2) By reason of the Privileges-and-Immunities Clause of the Constitution, a State may not discriminate against citizens of sister States. Art. IV, § 2. Therefore Missouri cannot allow suits by non-residents Missourians for liability under the Federal Employers' Liability Act arising out of conduct outside that State and discriminatorily deny access to its courts to a non-resident who is a citizen of another State. But if a State chooses to '[prefer] residents in access to often overcrowded Courts' and to deny such access to all non-residents, whether its own citizens or those of other States, it is a choice within its own control. This is true also of actions for personal injuries under the Employers' Liability Act. * * * Whether a State makes such a choice is, like its acceptance or rejection of the doctrine of *forum non conveniens,* a question of State law not open to review here.

"But, (3), a State may reject the doctrine of *forum non conveniens* in suits under the Federal Employers' Liability Act because it may deem itself compelled by federal law to reject it. Giving the opinion of the Supreme Court of Missouri in these cases a scope most favorable to reliance on a non-federal ground, doubt still remains whether that Court did not deem itself bound to deny the motions for dismissal on the score of *forum non conveniens* by its view of the demands of our decisions in Baltimore & O. R. Co. v. Kepner, 314 U. S. 44 [62 S. Ct. 6, 86 L. ed. 28, 136 A. L. R. 1222], and Miles v. Illinois Central R. Co., 315 U. S. 698 [62 S. Ct. 827, 86 L. ed. 1129, 146 A. L. R. 1104].

"But neither of these cases limited the power of a State to deny access to its courts to persons seeking recovery under the Federal Employers' Liability Act if in similar cases the State for reasons of local policy denies resort to its courts and enforces its policy impartially, * * * so as not to involve a discrimination against

Employers' Liability Act suits and not to offend against the Privileges-and-Immunities Clause of the Constitution. No such restriction is imposed upon the States merely because the Employers' Liability Act empowers their courts to entertain suits arising under it.* * *

"Therefore, if the Supreme Court of Missouri held as it did because it felt under compulsion of federal law as enunciated by this Court so to hold, it should be relieved of that compulsion. It should be freed to decide the availability of the principle of *forum non conveniens* in these suits according to its own local law." (Italics supplied.)

It is not necessary to comment upon all of the federal decisions[3] relied upon by the respective parties here, but a brief comment on a few may be of some help.

The case of Douglas v. New York, N. H. & H. R. Co. 279 U. S. 377, 49 S. Ct. 355, 73 L. ed. 747, held that a state is under no compulsion to entertain suits under the F. E. L. A. as long as it treats its citizens who are nonresidents on the same basis as it treats others who are not citizens. In that case the suit was brought under the F. E. L. A. in the courts of New York by a citizen of Connecticut then residing in Connecticut. Defendant carrier was a Connecticut corporation doing an interstate business in New York. The accident occurred in Connecticut. New York had a statute which gave the courts of its state the authority to dismiss under the *forum non conveniens* doctrine. In affirming the action of the New York court dismissing the cause of action, the United States Supreme Court said (279 U. S. 387, 49 S. Ct. 356, 73 L. ed. 752):

"* * * the statute applies to citizens of New York as well as to others and puts them on the same footing. There is no discrimination between citizens as such, and none between non-residents with regard to these foreign causes of action. A distinction of privileges according to residence may be based upon rational considerations and has been upheld by this Court, * * *. There are manifest

[3]For a rather comprehensive review of the decisions, see Mooney v. Denver & R. G. W. R. Co. 118 Utah 307, 221 P. (2d) 628.

reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned.

"As to the grant of jurisdiction in the Employers' Liability Act, that statute does not purport to require State Courts to entertain suits arising under it, but only to empower them to do so, so far as the authority of the United States is concerned. It may very well be that if the Supreme Court of New York were given no discretion, being otherwise competent, it would be subject to a duty. But there is nothing in the Act of Congress that purports to force a duty upon such Courts as against an otherwise valid excuse."

In Baltimore & O. R. Co. v. Kepner, 314 U. S. 44, 62 S. Ct. 6, 86 L. ed. 28, 136 A. L. R. 1222, an action was brought under the F. E. L. A. in the New York federal court by a citizen and resident of Ohio to recover for injuries sustained in Ohio. Defendant thereupon petitioned the Ohio court to enjoin plaintiff from maintaining his suit in New York. The Ohio court refused to do so, and the United States Supreme Court affirmed. Miles v. Illinois Cent. R. Co. 315 U. S. 698, 62 S. Ct. 827, 86 L. ed. 1129, 146 A. L. R. 1104, involved a similar situation. The holding in both of these cases is that a state may not enjoin a citizen or resident of that state from prosecuting an action under the F. E. L. A. in a foreign state if such foreign state is willing to entertain the action. They do not hold that the state in which the action is brought may not decline to entertain jurisdiction under the *forum non conveniens* doctrine.

In Pope v. Atlantic Coast Line R. Co. 345 U. S. 379, 73 S. Ct. 749, 97 L. ed. 1094,[4] plaintiff sued his employer, an interstate railway company, for injuries sustained in the course of his employment under the F. E. L. A. Plaintiff was a resident of Georgia. The injuries occurred in Georgia. The action was brought in Alabama. Defendant railway company instituted a suit in equity in Georgia to restrain plaintiff from prosecuting his action in Alabama. The United States Supreme Court, following the Kepner and Miles cases, held that 28 USCA, § 1404(a), applied only to federal courts and did

---

[4]See, 38 Minn. L. Rev. 279.

not grant to the Georgia court the power to apply the doctrine of *forum non conveniens* in F. E. L. A. cases. The case is not authority however for the proposition asserted here that the states do not have inherent power to determine under their local law whether such doctrine should be applied. The court simply held that after the passage of § 1404(a) the decision in the Miles case still stands. The court summarized its decision thus (345 U. S. 387, 73 S. Ct. 753, 97 L. ed. 1101) :

"Since the narrow question in this case is simply whether the Miles case is still controlling; since we find no legislation which has devitalized it in any way, and since we find affirmative evidence that Congress chose to let it stand, the judgment below must be reversed."

The net result of federal decisions as we see it, as applied to the facts of this case, is that, when a citizen of Nebraska, resident therein, institutes a suit in the state courts of Minnesota to recover for injuries sustained in Nebraska under the F. E. L. A., the courts of Nebraska may not enjoin him from prosecuting his suit in Minnesota if this state is willing to accept jurisdiction but that the Minnesota courts, where the action is brought, are free to decide the applicability of the doctrine of *forum non conveniens* under its local law as long as it treats nonresident citizens of Minnesota and nonresident noncitizens on an equal basis.

■ We find nothing in our state constitution which would prohibit the application of the doctrine of *forum non conveniens*. It is undoubtedly true that up to the present time our decisions indicate a local policy of entertaining suits by citizens and noncitizens alike. Whether this policy has been based on an assumption that under the federal law we were required[5] to entertain these suits or simply on a belief that our courts should be open to all who come here seeking redress, we need not now determine. It is enough to say on this point that there is no bar under our constitution to the application of the *forum non conveniens* doctrine.

---

[5]Cf. State ex rel. Prall v. District Court, 126 Minn. 501, 148 N. W. 463.

■ We come then to the crucial question of whether or not we should longer adhere to our former decisions and in particular Boright v. Chicago, R. I. & P. Ry Co. 180 Minn. 52, 230 N. W. 457.

Under the rule of *stare decisis* we should not lightly overrule prior decisions of this court, but the rule of *stare decisis* is not an inflexible rule of law but rather a policy of the law. The rule has its roots deep in the historical development of our law and should not be ignored unless the reasons for departing from former decisions greatly outweigh reasons for adhering to them. However, there are certain well-recognized limitations to the application of the rule. The strictness with which the rule is followed depends upon the nature of the case. It is most strictly followed in the field of property law, where rights may have become vested in reliance upon the decisions of this court.[6] The same is true in the field of trust law.[7] Where no rights have vested in reliance upon former decisions, the rule is not so strictly followed.

In German-American Bank v. White, 38 Minn. 471, 475, 38 N. W. 361, 363, this court, speaking through Mr. Justice Mitchell, said:

"* * * Inasmuch as it [the rule announced in former decisions] is not a rule of property, but merely one of practice, a change in which will not affect any vested rights, we are * * * of opinion that it should no longer be adhered to."

Again, in Rosse v. St. Paul & Duluth Ry. Co. 68 Minn. 216, 219, 71 N. W. 20, 21, 37 L. R. A. 591, Mr. Justice Mitchell, speaking for the court, said:

"* * * The decision is not a rule of property. Neither can railway companies claim to have acquired any right, either legal or moral, under it, * * *."

In Anderson v. Hanson, 28 Minn. 400, 404, 10 N. W. 429, 431, in departing from a former decision, we said:

---

[6]Messerschmidt v. Baker, 22 Minn. 81; 14 Am. Jur., Courts, § 126; 5 Dunnell, Dig. & Supp. § 8819.

[7]In re Trust Created by Moulton, 233 Minn. 286, 303, 46 N. W. (2d) 667, 676, 24 A. L. R. (2d) 1092.

"* * * This does not wrong the defendant, for his conduct in the premises cannot have been regulated or affected by the decision * * *."

It must be evident that no one can have a vested right in venue. In Hayes v. Chicago, R. I. & P. R. Co. (D. Minn.) 79 F. Supp. 821, 824, the court said with respect to the venue of an action brought under the F. E. L. A.:

"* * * No one obtains any vested right in venue. It is granted by legislative enactment and can be withdrawn by the same power. The right is procedural and not substantive. The fact that these cases were brought in this District before the statute became effective is immaterial," citing 16 C. J. S., Constitutional Law, § 262.

In holding that 28 USCA, § 1404(a), applied to F. E. L. A. cases commenced before the enactment of the act, the United States Supreme Court in the case of Ex parte Collett, 337 U. S. 55, 71, 69 S. Ct. 944, 953, 93 L. ed. 1207, 1217, after stating that § 1404(a) was a remedial provision, quoted with approval the following statement from Crane v. Hahlo, 258 U. S. 142, 147, 42 S. Ct. 214, 216, 66 L. ed. 514, 518:

"No one has a vested right in any given mode of procedure * * *."

Where the reasons for the rule have ceased to exist or where the rule is no longer adapted to the changed conditions of society, a court ought not to blindly adhere to former decisions even though legally sound when the case was decided. In State v. Manford, 97 Minn. 173, 177, 106 N. W. 907, 908, we said:

"While not yielding blind obedience to the past, we recognize the obligation to respect the former decisions of the court, and to adhere to them, unless they are clearly and manifestly erroneous or no longer adapted to changed conditions of society."

In Park Const. Co. v. Independent School Dist. 209 Minn. 182, 187, 296 N. W. 475, 478, 135 A. L. R. 59, we said:

"No rights of property involved, nor rule of practice, the American doctrine of *stare decisis* is guiding policy, not inflexible

rule. 14 Am. Jur., Courts, § 124, *et seq*. It is no shield for plain error. Neither does it bar coördination of legal philosophy with that of new and commanding facts. Such coördination is necessary in order to satisfy the imperative demand for realistic judicial treatment of issues in their own actual environment rather than a synthetic one made from the materials of discarded doctrine. Particularly, it can have no restraining effect when, as here, an earlier policy of decision law is opposed to a later rule declared by statute."[8]

Of necessity, if law is to be a living thing, former decisions of any court must be discarded when they can no longer be adapted to changed conditions of society. It is, and must be, the policy of courts to adapt the law to the economic and social conditions of the times, at least where changes in former decisions do not affect vested rights of those who may have acted in reliance upon such decision.[9] A stubborn adherence to former decisions under the rule of *stare decisis* when such decisions are no longer adapted to changed conditions of society may well lead to as bad law as decisions which are erroneous in the first place.

In Boright v. Chicago, R. I. & P. Ry Co. 180 Minn. 52, 230 N. W. 457,[10] plaintiff was a citizen and resident of Kansas. Defendant was organized under the laws of Illinois and Iowa. It had a line of railways and did an interstate and intrastate business in Illinois, Iowa, Minnesota, South Dakota, Missouri, Kansas, and other states. The action was brought under the F. E. L. A. to recover damages for injuries sustained in Kansas. The railway company moved to dismiss upon the ground, among others, that the ends of convenience would be served if the case were dismissed and the trial were not had in Minnesota. The trial court dismissed the action. We reversed. Defendant here contends that the decision is not based on the rule of *forum non conveniens*, but with that we disagree.

[8]This statement should be read in the light of the statutory change in the federal law.

[9]See, Swetland v. Curtiss Airports Corp. (6 Cir.) 55 F. (2d) 201, 83 A. L. R. 319.

[10]For a criticism of this case, see 44 Harv. L. Rev. 59.

Our decision is based on the conclusion that by virtue of local law, as announced in former decisions, it is not our law that a discretion may be exercised by the trial court in determining whether they will assume jurisdiction over such transitory causes of action when brought by residents of a foreign state. We there said (180 Minn. 60, 230 N. W. 460):

"* * * Our law from the beginning has permitted without giving discretion suits such as the one before us. To refuse jurisdiction, the constitution aside, would result in a complete change of the local law—a change which we do not wish to make. And this may be noted: If there were no privileges and immunities clause in the constitution such actions as this could be maintained under our repeated holdings—under our law from the earliest times; and of course the privileges and immunities clause does not lessen the plaintiff's rights.

"* * * It is idle to say that it is our law that citizens and residents of other states may not bring their transitory causes of action here. It is not our law that a so-called discretion can be exercised against those coming from other states. The law which permits access, if not enforced by the constitution, is local law; and if the privileges and immunities clause were unimportant, which was not the thought of the Supreme Court, or if it were so held here as hoped by the defendant, the question of right to take jurisdiction would be a question of local law for the supreme court of the state and a nonconstitutional one. In deciding the question of local law, one quite apart from the constitutional law, and the question which is ours to decide, we hold there is no discretion to refuse jurisdiction."

It is clear from the above quotation that the court placed decision upon the existing local law and also held that it was a matter for this court to determine what such local law should be.

With respect to causes of action brought under the F. E. L. A. we said (180 Minn. 61, 230 N. W. 461):

"* * * It is plain that the congress, when it enacted the amendment of 1910, wanted the help of the state courts in caring

for the litigation necessarily attendant upon the administration of the liability act. It declined to permit actions brought in the state courts to be removed to federal courts. * * * And the congress when it named the several courts in which suit might be brought likely had in mind that there were interests of employes which would be served best by not restricting the place of trial to the district where the cause of action arose or where the injured employe lived."

The Boright case was decided in 1930. At that time an injured employee of a railway company, who had a cause of action under the F. E. L. A., could choose one of several forums in which to bring the action. He could sue in the federal court in Minnesota, and the case could not be removed to another federal court; he could bring his action in our state courts; or he could sue in the state where the injury was sustained. In 1948, congress enacted 28 USCA, § 1404(a), which reads as follows:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[11]

Since the enactment of that statute, a plaintiff injured in Kansas, as in the Boright case, who brought his action in federal court in Minnesota, would be subject to the provisions of the statute, and such court could remove the case to any other federal district court. If he then still persisted in suing in Minnesota, he might dismiss and sue in one of our state courts, and under our decision in the Boright case our courts would be powerless to do anything about it. The result has been that, instead of sharing the burden of entertaining the trial of such transitory causes of action with the federal courts, we virtually have become the sole repository for such causes of action and must now carry the whole burden where a resident of a foreign state wishes to bring his action in the state of Minnesota.

---

[11]This provision applies to actions under the F.E.L.A. cases. Ex parte Collett, 337 U. S. 55, 69 S. Ct. 944, 93 L. ed. 1207.

If it were true when we decided the Boright case (180 Minn. 61, 230 N. W. 461) "that the congress * * * wanted the help of the state courts in caring for the litigation necessarily attendant upon the administration of the liability act" as applied to transitory causes of action, that is no longer true, because congress has now recognized the inequity of compelling a defendant litigant to defend such causes of action hundreds of miles from the locale of the accident by permitting federal courts to send the cause of action back where, in a multitude of cases, it belonged or to some other court where the trial could more equitably be held. In view of the fact that congress has now adopted the rule of *forum non conveniens* in connection with such actions brought in federal court, there seems to be no good reason why we should not follow the same procedure when such actions are brought in our court.

This situation was recognized by our own able federal jurist, the Honorable Judge Nordbye, in Hayes v. Chicago, R. I. & P. R. Co. (D. Minn.) 79 F. Supp. 821, 826, where, after holding that 28 USCA, § 1404(a), applied to cases brought under the F. E. L. A., he said:

"Reference is made by plaintiffs to the fact that Minnesota does not recognize the doctrine of forum non conveniens and that, if this Court transfers these cases, the plaintiffs may dismiss and institute new actions in the Minnesota State Courts and that the local State Courts would be required to entertain jurisdiction. This may be true. Section 1404(a) only applies to the transfer of cases pending in Federal Courts and it may seem somewhat anomalous that, upon the transfer, plaintiffs may reenter the State via the State Courts' jurisdiction. But that is a matter which does not concern our duty in light of the statute which we believe to be applicable, and our responsibility ends when we have given due consideration to the application of the defendant for a transfer of these cases on the grounds set forth in the motions."

In his concurring opinion in Missouri ex rel. Southern Ry. Co. v. Mayfield, 340 U. S. 1, 6, 71 S. Ct. 1, 3, 95 L. ed. 3, 9, Mr. Justice

Jackson also recognized the anomaly of such a situation when he said:

"* * * Certainly a State is under no obligation to provide a court for two nonresident parties to litigate a foreign-born cause of action when the Federal Government, which creates the cause of action, frees its own courts within that State from mandatory consideration of the same case."

There are other reasons why we should no longer follow the Boright case. It is common knowledge that litigation of all kinds has increased to such an extent that many of our courts are now so congested that litigants are required to wait months and sometimes years before cases can be tried. This situation has become so acute that every session of the legislature is importuned to add more judges to some of our district courts. In many instances the need for such additional judges has come from districts overburdened by the importation of F. E. L. A. cases. The expense, too, of trying such transitory actions, which can more equitably be tried elsewhere, is no small burden for the counties into which they come.

In addition to these reasons there is the fact that many states have now adopted the rule of *forum non conveniens,* and each time another state adopts the rule the inevitable result is that those states remaining in the group not adopting it must of necessity receive and try that many more cases. As a practical matter, no showing has been made in the case before us that it would not be less expensive to all concerned and also more equitable that the case be tried in the courts of the state where the accident happened. Nor has any showing been made that a competent court is not available in such states. In Hayes v. Chicago, R. I. & P. R. Co. (D. Minn.) 79 F. Supp. 821, 824, the Honorable Judge Nordbye said in that respect:

"* * * No showing has been made that there is something so sacrosanct about plaintiffs' right under the Federal Employers' Liability Act to bring their actions in Minnesota, some eight hundred to one thousand miles away from where the accidents happened

in seven of the cases and over three hundred miles away in the other, that Congress intended to preserve that right of venue without any limitation when all other plaintiffs in the many types of civil actions of which the Federal Courts have jurisdiction are to be subject to the right of transfer upon a proper showing being made."

It can hardly be open to argument that, in the trial of cases arising in Minnesota, we have long recognized the equity of transferring cases from one district to another where the convenience of witnesses or the interests of justice would best be served by having the case tried in a district other than the one in which it was commenced. It is difficult to see why we should recognize the discretionary power of trial courts to transfer actions from one district to another, even across the entire state, and still refuse to recognize the discretionary power of the trial courts to refuse jurisdiction of transitory causes of action which can better and more equitably be tried in some other available forum.

It would serve no useful purpose to review at length the decisions of other foreign states in which the rule of *forum non conveniens* has been recognized and applied.[12]

It is interesting to note that California has now adopted the rule even though it had formerly rejected it in F. E. L. A. cases. In Leet v. Union Pac. R. Co. 25 Cal. (2d) 605, 608, 155 P. (2d) 42,

---

[12]The following states having a constitutional provision similar to that of Minnesota have applied the doctrine of *forum non conveniens:* Delaware: Eastern Union Co. v. Moffat Tunnel Improvement Dist. 36 Del. 488, 178 A. 864; Florida: Hagen v. Viney, 124 Fla. 747, 169 So. 391; Illinois: Whitney v. Madden, 400 Ill. 185, 79 N. E. (2d) 593; Maine: Foss v. Richards, 126 Me. 419, 139 A. 313; Massachusetts: Universal Adjustment Corp. v. Midland Bank, 281 Mass. 303, 184 N. E. 152, 87 A. L. R. 1407; Utah: Mooney v. Denver & R. G. W. R. Co. 118 Utah 307, 221 P. (2d) 628. In the cases of Anderson v. Delaware, L. & W. R. Co. 18 N. J. Misc. 153, 11 A. (2d) 607, and Kantakevich v. Delaware, L. & W. R. Co. 18 N. J. Misc. 77, 10 A. (2d) 651, the New Jersey court recognized the applicability of the doctrine but held that in the case before it there would be no justification for applying it. See, also, Thistle v. Halstead, 95 N. H. 87, 58 A. (2d) 503.

44, 158 A. L. R. 1008, the California court held that under federal statutes and decisions of the United States Supreme Court—

"the state court having jurisdiction may not refuse to exercise it. The doctrine of *forum non conveniens,* claim of a burden on interstate commerce, or war conditions constitute no justification for a refusal to exercise jurisdiction."

Schultz v. Union Pac. R. Co. 118 Cal. App. (2d) 169, 257 P. (2d) 1003, was decided after Missouri ex rel. Southern Ry. Co. v. Mayfield, *supra,* was decided by the United States Supreme Court, but the California court still refused to apply the doctrine of *forum non conveniens.* The court in that decision, as in our Boright case which it cited as authority, held that under the local law of California the court had no discretion in denying jurisdiction of a cause of action which arose outside the state when brought by a citizen of California and that, therefore, under the privileges and immunities clause of the federal constitution, they could not deny jurisdiction of such cause of action when brought by a nonresident.

Less than a year later, in Price v. Atchison, T. & S. F. Ry. Co. 42 Cal. (2d) 577, 268 P. (2d) 457, the California court adopted and applied the rule of *forum non conveniens* in a case involving an action brought under the F. E. L. A. The court expressly disapproved of any statement in the Schultz case which would indicate that there was any local law in California which prohibited the application of the rule of *forum non conveniens.* The language of the California court is pertinent inasmuch as the situation in California and the situation now before us is almost identical. The court said (42 Cal. [2d] 583, 268 P. [2d] 461):

"* * * Although there is no statutory authorization for such transfer by state courts, and although under the doctrine of *forum non conveniens* a cause arising outside California will be dismissed rather than transferred, we are of the view that the injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state (see discussion 35 Cal. L.

Rev. 402-415) require that our courts, acting upon the equitable principles and within the constitutional limits hereinabove stated, exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere. * * * A contrary policy would result in the anomaly that a federal district court situated in California could in the interest of justice transfer to another district or division an FELA action filed here, whereas regardless of the equities involved state courts would be powerless to decline to exercise jurisdiction over comparable actions brought in those courts. We are persuaded that such a result would be promotive of neither fairness, justice, nor congressional intent when removal power was bestowed upon the federal district courts."

Many of our older decisions[13] are based on the proposition that, inasmuch as it is the policy of this state to accept jurisdiction of transitory causes of action brought here by citizens of this state who are nonresidents, we may not decline to accept jurisdiction of actions brought by nonresident noncitizens without running afoul of the privileges and immunities clause of the federal constitution (U. S. Const. art. IV, § 2). With those decisions there can be no quarrel. It is only by applying the doctrine of *forum non conveniens* equally as to citizens and noncitizens alike that we stay within constitutional limits.

In passing, a few other contentions of plaintiff deserve some comment. It is said that, where a rule has stood for a long period of time, we should leave any change to be made to the legislature. That proposition has been often stated by this court and applies with the greatest vigor to those changes in former decisions which affect vested rights.[14] The reason for this is that changes made by the legislature can be made operative prospectively only so as not to affect rights which have already vested in reliance on our former

[13]See, for instance, State ex rel. Prall v. District Court, 126 Minn. 501, 148 N. W. 463.

[14]See, for instance, In re Trust Created by Moulton, 233 Minn. 286, 46 N. W. (2d) 667, 24 A. L. R. (2d) 1092.

decisions. As we have said above, the rule does not apply with equal vigor to those decisions involving practice or policy which does not affect vested rights. Where it appears that such decisions, whether due to changes in statutes by our legislature or congress or to changes in our economic or social life, are no longer adaptable or the reasons for the rule no longer exist, it sometimes becomes our responsibility to recognize such changes and abrogate the rule in the same manner in which it has been established, that is, by a decision of this court.

"* * * being a judge-made rule, no vested rights depending on it, judges are just as competent to get rid of it as the legislature." Rye v. Phillips, 203 Minn. 567, 570, 282 N. W. 459, 460, 119 A. L. R. 1120.

Courts sometimes are more conversant with changes in laws of other jurisdictions that make adherence to our former decisions impracticable than is the legislature, and in such cases we should not shun the responsibility of making necessary changes in local law when it appears that the reasons underlying rules formerly established by our decisions have vanished or that such decisions are no longer adaptable to changed conditions of society. Here we have a definite change in policy by congress which we think makes it impracticable to any longer adhere to our decision in the Boright case.

It is also said that we have already rejected the doctrine of *forum non conveniens* when we adopted our rules of civil procedure. With that contention we do not agree. In the tentative draft of the rules of civil procedure our advisory committee included a proposed Rule 82.02, which, if adopted, would have included the *forum non conveniens* doctrine.[15] The committee was not in agreement on the proposal.[16] As a result, the proposed rule was eliminated from the final draft and no action was taken thereon by the court, but the matter was left open for future consideration. Nei-

---

[15]See tenative draft and note of committee.

[16]See report of chairman of committee, The Bench and Bar of Minnesota, Vol. 7, No. 9, September 1950.

ther does Rule 4.03 (c) prevent the adoption of the rule now. This rule was the same in the tentative draft which included the proposed Rule 82.02 as it was in the final draft where Rule 82.02, as first proposed, was eliminated. Obviously, it had the same implication in both. If Rule 4.03 (c) was intended to prevent adoption of the *forum non conveniens* rule, then neither the inclusion of Rule 82.02 in the tentative draft or the elimination thereof from the final draft would have any meaning.

We now hold that the reasons for rejecting the doctrine of *forum non conveniens* no longer exist and that the rule announced in Boright v. Chicago, R. I. & P. Ry. Co. 180 Minn. 52, 230 N. W. 457, and other cases of like import is no longer adaptable to the changed conditions of our society. The cases so holding are expressly overruled. The district courts of this state may fairly exercise their discretion in declining to accept jurisdiction of transitory causes of action brought here by citizens or noncitizens of this state who are nonresident when it fairly appears that it would be more equitable that the cause of action be tried in some other available court of competent jurisdiction. The discretion of the court is one which should be cautiously exercised in the interest of justice only when it appears that it will be more equitable to try the cause of action elsewhere than here.

If the trial courts abuse their discretion in the border-state cases suggested in the concurring opinion of Mr. Chief Justice Dell, relief will no doubt be available upon petition to this court.

Affirmed.

DELL, Chief Justice (concurring).

It seems clear to me that congress, by granting to employees under the F. E. L. A. the choice of instituting their actions in either federal or state courts, intended that undue restrictions should not be placed upon them in selecting the venue for the trial of their actions and that state lines should not be a criterion in determining venue in actions instituted under the act. In the case of Boright v. Chicago, R. I. & P. Ry. Co. 180 Minn. 52, 62, 230 N. W. 457, 461, Mr. Justice Dibell stated:

"\* \* \* And the congress when it named the several courts in which suit might be brought likely had in mind that there were interests of employes which would be served best by not restricting the place of trial to the district where the cause of action arose or where the injured employe lived."

In order to avoid confusion and to afford employees under the act a reasonable choice of venue, causes of action which arise in an adjoining state or where the employee lives in an adjoining state, in my judgment, should be triable in this state at the option of the employee. To hold otherwise, in my opinion, would unduly restrict employees under the act and give to trial courts a discretion which I do not think they should have.

Moreover the fact that, in order not to violate the privileges and immunities clause of the federal constitution (U. S. Const. art. IV, § 2), citizens of this state who are nonresidents must be treated in the same manner as nonresident noncitizens poses a real problem. It is a matter of common knowledge that along our borders are citizens of this state who reside across the border in adjoining states, illustrative of which are citizens of Minnesota who work or are in business in Moorhead, Minnesota, but who reside in Fargo, North Dakota. Along our borders in this state are many cities which act as trade centers for nonresident noncitizens from distant points in adjoining states. Because of our numerous lakes, many nonresident noncitizens from adjoining states own summer residences upon these lakes where they spend a large amount of their leisure time each year. And many nonresident noncitizens from adjoining states are regularly attracted to our lake-resort areas each summer. In the past these nonresidents, whether citizens or noncitizens of this state, have frequently resorted to our courts for the disposition of their cases, and in my judgment they should continue to have ready and unhampered access to the courts of this state for the settlement of their disputes.

The cause of action before us arose in the state of Nebraska, and the plaintiff is a resident of that state. Since the record before us fails to show any reason why the case cannot be fairly tried

in Nebraska or in some state adjoining Nebraska, it appears to me that the trial court did not abuse its discretion in dismissing the action without prejudice on the ground of *forum non conveniens*. Under a different showing by the plaintiff I might well have concluded otherwise. I agree that the discretion of the trial court, in declining to accept jurisdiction, should be cautiously exercised in the interest of justice and should be exercised only when it appears that it will be more equitable to try the cause of action elsewhere than here. With this explanation, I concur in the foregoing opinion.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.