129 So.2d 433 (1961)
SOUTHERN RAILWAY COMPANY, a Foreign corporation, Appellant,
v.
Junior L. BOWLING, Appellee.
No. 60-622.
District Court of Appeal of Florida. Third District.
April 24, 1961.
Rehearing Denied May 25, 1961.
*434 Scott, McCarthy, Preston, Steel & Gilleland and Robert J. Beckham, Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham, Miami, for appellee.
HORTON, Chief Judge.
This appeal seeks the reversal of an order denying the appellant's motion to dismiss. This was an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. By its motion, the appellant sought application of the doctrine of forum non conveniens. The cause of action arose in the State of Georgia between non-residents of this state.
The application of this doctrine is discretionary on the part of the trial judge. See Hagen v. Viney, 124 Fla. 747, 169 So. 391. Therefore, the question presented is whether there was a clear abuse of discretion on the part of the trial judge.
Having reviewed the record, the briefs and appendices of the parties, we conclude that the appellant has failed to demonstrate an abuse of the discretion vested in the trial judge.
Accordingly, the order appealed is affirmed.
CARROLL, CHAS., J., concurring in part and dissenting in part.
MILLEDGE, STANLEY, Associate Judge, concurring in part and dissenting in part.
CARROLL, CHAS., Judge (concurring in part and dissenting in part).
I concur with Chief Judge HORTON in holding that the order appealed is appealable under rule 4.2, subd. a, Florida Appellate Rules, 31 F.S.A., but I am unable to agree with the view expressed in the majority opinion that the trial court's refusal to dismiss this case under the doctrine of forum non conveniens was not an abuse of discretion.
The circumstances presented so strong a case that the denial of the motion to dismiss was either an abuse of judicial discretion or was an improper rejection of the established doctrine of forum non conveniens. The doctrine is a part of the law of Florida, when neither party resides in the state. See Hagen v. Viney, 124 Fla. 747, 169 So. 391. Cf. Greyhound Corporation v. Rosart, Fla.App. 1960, 124 So.2d 708; Atlantic Coast Line Railroad Co. v. Ganey, Fla.App. 1960, 125 So.2d 576.
In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062, the Supreme Court of the United States suggested some of the considerations which should serve as guides in deciding whether to apply the doctrine:
"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to *435 be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.[1] * * *"
Circumstances bearing on the applicability of the doctrine here, included the following:
Neither party was a resident of Florida.
The plaintiff was a citizen and resident of Rome, Georgia.
The defendant railway company had its principal or home office in Norfolk, Virginia.
The cause of action arose in Rome, Georgia.[2]
Dade County, Florida, the chosen forum, is approximately 750 miles from Rome, Georgia, being more distant therefrom than any point in the Southern Railway system.
The laws of Georgia, not Florida, would apply (Astor Electric Service v. Cabrera, Fla. 1952, 62 So.2d 759), to the extent that state substantive law may be involved in this F.E.L.A. case (Ft. Worth & Denver Railway Co. v. Threadgill, 5 Cir., 1955, 228 F.2d 307).
All of the witnesses, including the treating physicians are in Rome, Georgia, and are not amenable to compulsory process issued in Florida.
The additional expense for transporting and maintaining witnesses would be considerable.[3]
The expense of transporting and maintaining witnesses and other parties connected with the trial is more considerable because of the great distance involved.
Selection of a forum in Florida requires the employment of additional local counsel.
Opportunity to view the premises, which could become important here, is lost.
No substantial difference appears in the time in which a case may be reached for trial, as between available courts in Georgia and in Dade County, Florida.
The forum chosen, circuit court in Dade County, Florida, is a busy court with heavy common law and equity dockets made up of Florida cases.
Choice of the circuit court in Metropolitan Dade County, Florida, as a place in which to seek damages for a tort injury *436 suffered in Rome, Georgia, may readily be recognized as astute forum shopping.[4]
The appellee argued that because the federal statute allows the railroad company to be sued wherever it does business, the doctrine should not be applied in F.E.L.A. cases. The argument is without merit. State courts are free to apply the doctrine of forum non conveniens in F.E.L.A. cases. Missouri ex rel. Southern Railway Co. v. Mayfield, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3. Since that decision the states have inclined toward use of the doctrine. See I Moore, Federal Practice, pp. 2635-36 (1959). Price v. Atchison, T. & S.F. Ry. Co., 1954, 42 Cal.2d 577, 268 P.2d 457, 43 A.L.R.2d 756; Johnson v. Chicago, Burlington & Quincy Railroad Co., 1954, 243 Minn. 58, 66 N.W.2d 763; Maynard v. Chicago & North Western Railway Co., 1956, 247 Minn. 228, 77 N.W.2d 183; Elliott v. Johnston, 1956, 365 Mo. 881, 292 S.W.2d 589; Gore v. United States Steel Corp., 1954, 15 N.J. 301, 104 A.2d 670, 48 A.L.R.2d 841; St. Louis-San Francisco Railway Co. v. Superior Court, Creek County, Okl. 1955, 290 P.2d 118; Atchison, Topeka & Santa Fe Railway Co. v. District Court of Creek County, Okl. 1956, 298 P.2d 427; Plum v. Tampax, Inc., 1960, 399 Pa. 553, 160 A.2d 549. See also 1959 Wisc. Stats., § 262.01 et seq.; 28 U.S.C.A. § 1404 (a). Contemporary legal commentators favor its use. Barrett, the Doctrine of Forum Non Conveniens, 35 Cal.L.Rev. 380, 381-83 (1947); Currie, Change of Venue and the Conflict of Laws, 22 U. of Chi.L.Rev. 405, 421 (1955); Ehrenzweig, The Transient Rule of Personal Jurisdiction: The "Power Myth" and Forum Conveniens, 64 Yale L.J. 289, 312 (1956); Kaufman, Transfers Under New Judicial Code, 10 F.R.D. 595, 606 (1951); Restatement Second, Conflict of Law, § 117e (tent. draft no. 4, 1957).
The "sound judicial discretion" which is reposed in the trial court to apply or reject the doctrine of forum non conveniens is not unbridled, but is to be exercised in the light of the facts and circumstances in each particular case, as guided by prescribed standards of judicial action. That implies that the doctrine should be put to use in a suit in which the facts and circumstances bearing on the doctrine make a strong case for its use, and that the doctrine should be rejected in those suits where circumstances fail to present such a substantial or strong showing.[5] A dissenting opinion is hardly the place to attempt to state any policy pronouncement on a matter such as this, but it seems evident that the range of choice which "sound judicial discretion" gives does not permit rejection of the doctrine in a case such as this one, with facts so strongly favoring the application of the doctrine of forum non conveniens.
I am of the opinion that the learned trial judge was in error when he denied the motion, and that the order appealed from should be reversed with directions to dismiss the cause.
MILLEDGE, STANLEY, Associate Judge (concurring in part and dissenting in part).
A majority of the court, although differing as to the proper disposition of the case, agree that the order appealed from is appealable. I am in accord with the opinion and conclusion of the Chief Judge as to the merits of the case and wish to state my own view as to the significance of factors here *437 which bear upon the trial court's discretion not necessarily present in all cases to which the doctrine of forum non conveniens is applicable.
In the case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 842, 91 L.Ed. 1055, the Supreme Court of the United States said:
"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.
"Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice. The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it.
"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.
"* * * But unless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."
The significance of the factor of allowing the plaintiff a choice of forum to stand in cases generally is much greater in F.E.L.A. cases where the same act of Congress which creates the cause of action confers on the plaintiff exceptionable rights in the selection of his forum. He may sue in any appropriate state court or in any federal district in any part of the territory served by the railroad and if he chooses a state court, the railroad may not remove to a federal court. Mr. Justice Jackson, concurring in Miles v. Illinois Central Railroad Co., 315 U.S. 698, 62 S.Ct. 827, 831, 86 L.Ed. 1129, puts quite bluntly the right of the plaintiff in a F.E.L.A. case to forum shop:
"Realistically considered, the issue is earthy and unprincipled. So viewed, the real issue is whether a plaintiff with a cause of action under the Federal Employers' Liability Act * * * may go shopping for a judge or a jury believed to be more favorable than he would find in his home forum. An advantage which it is hoped will be reflected in a judgment is what makes plaintiffs leave home and incur burdens of expense and inconvenience that would be regarded as oppressive if forced upon them. And that is what makes railroads seek injunctions such as this one.
"The judiciary has never favored this sort of shopping for a forum. It has sought to protect its own good name as well as to protect defendants by injunctions against the practice of seeking out soft spots in the judicial system in which to bring particular kinds of litigation. But the judges with lawyerly indirection have not avowed the interest of the judiciary in orderly resort to the courts as a basis for their decision, and have cast their protective doctrines in terms of sheltering *438 defendants against vexatious and harassing suits. This judicial treatment of the subject of venue leads Congress and the parties to think of the choice of a forum as a private matter between litigants and in cases like the present obscures the public interest in venue practices behind a rather fantastic fiction that a widow is harassing the Illinois Central Railroad. If Congress had left us free to consult the ultimate public interest in orderly resort to the judicial system I should agree with Mr. Justice Frankfurter's conclusion. But the plaintiffs say that they go shopping, not by leave of the courts themselves, but by the authority of Congress. Whether the Congress has granted such latitude is our question.
"Unless there is some hidden meaning in the language Congress has employed, the injured workman or his surviving dependents may choose from the entire territory served by the railroad any place in which to sue, and in which to choose either a federal or a state court of which to ask his remedy. There is nothing which requires a plaintiff to whom such a choice is given to exercise it in a self-denying or large-hearted manner. There is nothing to restrain use of that privilege as all choices of tribunal are commonly used by all plaintiffs to get away from judges who are considered to be unsympathetic and to get before those who are considered more favorable; to get away from juries thought to be smallminded in the matter of verdicts and to get to those thought to be generous; to escape courts whose procedures are burdensome to the plaintiff and to seek out courts whose procedures make the going easy.
"That such a privilege puts a burden on interstate commerce may well be admitted, but Congress has the power to burden. The Federal Employers' Liability Act itself leaves interstate commerce under the burden of a medieval system of compensating the injured railroad worker or his survivors. He is not given a remedy, but only a lawsuit. It is well understood that in most cases he will be unable to pursue that except by splitting his speculative prospects with a lawyer. The functioning of this backward system of dealing with industrial accidents in interstate commerce burdens it with perhaps two dollars of judgment for every dollar that actually reaches those who have been damaged, and it leaves the burden of many injuries to be borne by them utterly uncompensated. Such being the major burden under which the workmen and the industry must function, I see no reason to believe that Congress could not have intended the relatively minor additional burden to interstate commerce from loading the dice a little in favor of the workman in the matter of venue. It seems more probable that Congress intended to give the disadvantaged workman some leverage in the choice of venue than that it intended to leave him in a position where the railroad could force him to try one lawsuit at home to find out whether he would be allowed to try his principal lawsuit elsewhere."
It seems to me that in a F.E.L.A. case, since the plaintiff is given by the Congress a right to inconvenience the defendant, the proper application of the doctrine of forum non conveniens is limited to situations in which the railroad makes a strong showing that the inconvenient forum was not chosen for the purpose of trying a law suit but for the purpose of adding to the nuisance value of an unfounded claim. A court should not decline to exercise its jurisdiction merely because the forum is inconvenient to the defendant when the plaintiff is given a specific statutory right to impose the inconvenience.
I dissent to the implicit conclusion that the order is an appealable one. Obviously it is not a final order, as it would have been if the cause had been dismissed. See *439 Goldfarb v. Bronston, 154 Fla. 180, 17 So.2d 300. In denying the motion, the court is not disposing of the case; it simply decides that the inconvenience to the defendant of the chosen forum is not sufficient to justify the court in renouncing its admitted jurisdiction to try a case where the venue is according to statute. The case does not come within the provisions of Florida Appellate Rule 4.2, subd. a permitting an appeal from an interlocutory order "at common law relating to venue or jurisdiction over the person." The order here does not relate to venue or jurisdiction over the person. The defendant seeks a dismissal notwithstanding the jurisdiction of the court and notwithstanding the venue is proper. Appellate jurisdiction not being found in the literal terms of prescribed limitations, I suggest that there is nothing in this kind of problem to invite a strained construction to afford a review. The adverse consequences to a defendant of declining to review such an interlocutory appeal is far less than the consequences to a plaintiff in entertaining it. The United States Court of Appeals for the Third Circuit, in dealing with a similar problem arising under 28 U.S.C.A. § 1404(a), denied a petition for mandamus against a federal district judge who refused to transfer a case to another district. Apparently review by appeal of orders denying transfers under § 1404 has not even been attempted. In the case of All States Freight v. Modarelli, 3 Cir., 1952, 196 F.2d 1010, 1012. Judge Goodrich, speaking for the court, said:
"We do not propose to grant such review where the judge in the district court has considered the interests stipulated in the statute and decided thereon. * * *
"We realize that the view we express is not the one which some of our judicial brethren are following with regard to this statute. But we cannot escape the conclusion that it will be highly unfortunate if the result of an attempted procedural improvement is to subject parties to two law-suits; first, prolonged litigation to determine the place where a case is to be tried; and, second, the merits of the alleged cause of action itself."
A plaintiff who avails himself of the venue right prescribed by law can easily be forced, by the pressure of the time consumed by appeal, to abandon this right and sue in the place of the defendant's choice. Our appellate procedure does not suffer because there are too few opportunities for review. I do not think that by construction any more need be added to those existing under the Supreme Court Appellate Rules.
I would dismiss the appeal.
NOTES
[1] See also Annotation 48 A.L.R.2d 800, 816-819 (1956).
[2] As to the place and circumstances of the plaintiff's injury, the complaint alleged:

"That on or about November 8, 1959, at or about 7:30 P.M. at or near the Rome Kraft Pulp Mill Yards near Rome, Georgia, the plaintiff was a conductor employed by the defendant; that while the plaintiff was in the performance of his duties as conductor he was caused to fall into a concealed hole or depression in the said yards * * *."
[3] Counsel for plaintiff argued that since plaintiff would be producing most of the witnesses, the defendant could not object to the cost of bringing them here. That argument overlooks the possibility that the defendant might be required to pay such added expense in the event the plaintiff prevails in judgment; and it by no means follows that defendant would not be required to transport and maintain witnesses.
[4] "* * * [T]he plaintiff may not, by choice of an inconvenient forum, `vex,' `harass,' or `oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. * * *" Gulf Oil Corp. v. Gilbert, supra, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062.
[5] Lack of pronouncements regarding the standards for exercise of such judicial discretion, has been said to result "in a small percentage of dismissals and a large percentage of confusion." See Bickel, The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12, 47 (1949).