Gold, J.
This is a motion to dismiss the complaint for lack of jurisdiction of this court over the subject matter of this action, or, in the alternative, because this court is forum non conveniens.
The complaint alleges that in August, 1953, defendant engaged plaintiff to negotiate an agreement between defendant and Saudi Arabia, under which defendant would provide a fleet of tankers to carry part of the oil produced in Saudi Arabia, and that defendant promised plaintiff, if successful, substantial payments, plus a share of the profits. It is further alleged that plaintiff did negotiate a 30-year agreement between defendant and Saudi Arabia, which was signed on January 20,1954, and confirmed by a Royal Decree of the King on April 9, 1954. Plaintiff charges that defendant has, nevertheless, refused to pay him any compensation, to his damage in the sum of $14,210,000.
On September 27, 1954, plaintiff executed an affidavit before the British consul, in Nice, France, in which he claimed that he had been employed by defendant to negotiate a contract for Maritime Oil Transportation with Saudi Arabia and that he had succeeded in doing so, only to he denied his promised compensation. In this affidavit, plaintiff charged that in the course of the nego *236 tiation of the contract, substantial bribes had been paid by defendant to important officials of Saudi Arabia with the knowledge, participation, and approval of plaintiff, and, in some instances, at the prodding of plaintiff. A copy of this affidavit, with exhibits attached, was sent by plaintiff to the King of Saudi Arabia.
On November 19,1954, more than a year prior to the commencement of this action, plaintiff had brought an action against defendant in a French court in Paris, France. In the complaint in that action, plaintiff alleged that defendant had on November 5,1953, signed an agreement promising plaintiff compensation if he succeeded in negotiating a contract between defendant and Saudi Arabia for Maritime Transportation of Saudi Arabian oil; that plaintiff did procure such a contract for defendant, incurring expenses in doing so; that when he demanded the agreed upon compensation, he was amazed to learn that defendant’s signature to the November 5th agreement had faded; that, at defendant’s request, he returned the agreement to the latter for proper signature, but that defendant refused to live up to his undertaking to redeliver a properly signed agreement. The complaint alleged that defendant was, therefore, guilty of ‘‘ the crime of fraud, a delict provided for and punished by Article 405 of the Penal Code ” of France.
World-wide publicity given to the charges in the Nice affidavit and in the Paris complaint resulted in newspaper and magazine articles. Statements by defendant that plaintiff’s charges were completely unfounded led to the commencement of libel actions by plaintiff against defendant, in the District of Columbia, and also in this court. On March 28,1956, this court was advised that the libel action in this court had been discontinued.
The instant action was commenced pursuant to an order for substituted service dated October 17, 1955. The defendant appeared specially, but made no motion to set aside service (or to strike out parts of the complaint), as required where objection is made to the court’s jurisdiction over the person of a defendant (Civ. Prac. Act, § 237-a). The failure to make such a motion waived defendant’s right to claim that there was no jurisdiction over his person, but it did not waive his right to make the present motion, which is predicated (1) upon alleged lack of jurisdiction over the subject matter and (2) upon the doctrine of forum non conveniens.
The basis of the present motion is that this court is forum non conveniens, and that plaintiff should seek redress from defendant, either in the action brought in Paris or in a new action to be commenced in France, where both parties reside. In opposition *237 to this motion, plaintiff’s attorneys contend that “ it is well settled that the courts of this state will assume and retain jurisdiction of all actions founded on foreign contracts or commercial transactions, without regard to the residence of the parties ”. They urge that the only actions between nonresidents which our courts will refuse to entertain are actions on noncommercial torts committed outside this State, and contract actions where practical difficulties would prevent the carrying out of the court’s decree (as in Rothstein v. Rothstein, 272 App. Div. 26, affd. 297 N. Y. 705). Various decisions are cited by plaintiff’s attorneys to support their claim, but it is important to note, all of them antedate the recent pronouncement on the subject by the Court of Appeals in Bata v. Bata (304 N. Y. 51, decided in 1952).
Whatever the law may have been prior to the publication of the opinion in Bata v. Bata (supra) there can no longer be any doubt that the law now is that our courts may dismiss contract actions, as well as tort actions, under the doctrine of forum non conveniens (p. 56): “ So many of the cases applying the forum non conveniens doctrine are in tort, that it was thought, or held, at one time that only tort cases felt the doctrine’s impact (see Gregonis v. Philadelphia & Reading Coal & Iron Co., 235 N. Y. 152,159, citing Furbush v. Nye, 17 App. Div. 325). However, it is now clear that the courts have power, in contract and other kinds of property litigation between nonresidents, to decline, as well as to accept, jurisdiction (Wedemann v. United States Trust Co., 258 N. Y. 315; Rothstein v. Rothstein, 272 App. Div. 26, affd. 297 N. Y. 705, supra; see Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 509).” Even before this declaration by the Court of Appeals, the Appellate Division of this department had declared that our courts’ discretion to decline to accept jurisdiction of actions between nonresidents extends to ‘ ‘ transitory contract actions ’ ’. The court had, accordingly, dismissed an action between nonresidents to recover for breach of a “ contract made and breached in another jurisdiction ” (Schlesinger v. Italian Line, 278 App. Div. 127,130, decided in 1951). This decision was affirmed (303 N. Y. 994). Thereafter in Central Pub. Co. v. Wittman (283 App. Div. 492, decided in 1954), the Appellate Division of this department, in an action between Indiana residents, on a contract made, to be performed, and allegedly breached in Indiana, said (p. 493): “ On all the facts disclosed, we think the interests of justice, the convenience of the court and the parties will be better served if this action is prosecuted and disposed of in the jurisdiction of the parties and the cause. These are sufficient reasons for the exercise of this court’s discretion under the doctrine of forum non conveniens to refuse to entertain the action.”
*238 Before considering whether the facts of the instant case are such as to justify the dismissal of this action under the doctrine of forum non conveniens, it is necessary to dispose of plaintiff’s claim that defendant is a permanent resident (i.e., a domiciliary) of the State of New York. If this he true, the action would not he one between nonresidents and no discretion to decline jurisdiction, under the doctrine of forum non conveniens, would exist.
The only affidavit submitted by plaintiff, in support of the claim that defendant’s permanent residence is in this State, is that of one of his attorneys, Alfange. Most of the statements made in the affidavit relate to matters as to which the affiant is, presumably, without personal knowledge. No attempt is made to show upon what evidence those statements were based. Defendant, on the other hand, has submitted affidavits of himself and others which set forth facts wholly irreconcilable with the obviously hearsay statements of Alfange. Although Alfange has submitted a reply affidavit as to other matters, he has made no effort to deny or refute the statements made in the affidavits submitted on behalf of defendant. In these circumstances, the factual statements contained in the affidavits submitted on behalf of defendant have been accepted as true. Only those statements of Alfange which have been admitted, or not denied, by defendant, or which refer to matters as to which Alfange claims personal knowledge, have been treated as factually correct. The evidence tending to support the claim that defendant’s domicile is in this State is as follows: (1) a house, on Sutton Square, in New York City, bought January 7,1949, and assessed at $90,000, is owned by a corporation, all the stock of which belongs to defendant’s wife; (2) very substantial sums have been spent in remodeling and refurnishing the house; (3) the name of defendant’s wife is listed in the telephone directory for the Sutton Square address; (4) defendant’s wife is a naturalized citizen of this country; (5) defendant’s wife, in 1948, leased a house at Oyster Bay, Long Island, for five years and later the lease was renewed for another five years; (6) defendant owns a motorboat, valued at about $700, which is in storage and has not been used for several years; defendant’s marriage to his wife took place in this State in December, 1946, and his two children were born here; defendant’s wife, at some unspecified time, told immigration authorities that she is a resident of this State; and, lastly, a housekeeper is maintained at the Sutton Square house and the Oyster Bay house. Additional claims made in Alfange’s affidavit have been vigorously denied by defendant, and no attempt has been made by Alfange to refute these denials. Thus, defendant denies that he owns two cars with New York licenses, operated by a liveried chauffeur. He states *239 he has no car in this country and employs no chauffeur here. He denies that ‘ ‘ a retinue ’ ’ of servants is employed at the two houses in this State and swears that each house has only a single employee, “ a housekeeper.” He denies that he has any charge accounts whatever, at any restaurant or shop in this State. He states, without denial, that he has no bank account anywhere in the United States. Statements by Alfange that defendant and various corporations controlled by him have office space in a building in New York City are denied by defendant and by officers of the corporations referred to. These officers state that defendant is neither an officer, director, nor employee, nor stockholder of the companies in question. Defendant states that his only connection with the companies is that he is one of the stockholders of a Panamanian corporation which is a minority stockholder of some of the companies.
In support of his claim that for some years his domicile has been in France, defendant states, without denial by plaintiff or plaintiff’s attorneys, that: (1) he leased an apartment at 88 Avenue Foch, Paris, about six years ago; (2) that he, his wife, and the two children, aged eight and five, live there; (3) that his children attend school abroad and have done so since they reached school age; (4) that defendant employs 10 servants at his Paris residence; (5) that he maintains and operates, in Paris, several automobiles, with two chauffeurs; (6) that during the last five years the two children have not come to this country at all; (7) that during the last five years, defendant’s wife has come to this country only on two trips, one in the latter part of 1952 and the other in the spring of 1955; (8) that defendant himself came to this country for only 24 days in 1953 and on three trips in 1954 (the longest of which was 64 days); (9) that in 1955 defendant came here primarily because of an indictment and civil litigation against him; and (10) that all of his trips to this country were made “on a temporary visitor’s visa ”.
Defendant states that at the time Ms wife acquired the Sutton Square and Oyster Bay houses, in 1948 and early in 1949, he and his wife hoped to be able to spend sufficient time in this country to enable them to educate the children here, but that this became impracticable, and they were compelled to establish their permanent home abroad because defendant’s business interests and offices are abroad. Defendant states, further, that Ms wife did not dispose of the two houses here (which she had acquired with independent resources she possessed prior to her marriage to him), because she did not need the funds and did not find the cost of keeping the houses burdensome. Defendant states that there is only a single employee at each house, because they are occu *240 pied only rarely, viz.: on the occasion of trips by defendant or his wife to this city. He points out that, in the light of the claims of plaintiff’s attorney, Alfange, that he is worth more than $300,-000,000, and has homes at Montevideo and Monte Carlo and Paris, in addition to those in New York, his wife’s retention of the New York homes is of no significance in determining where his domicile is located.
The foregoing facts far outweigh the evidence relied upon by plaintiff for his claim that defendant’s permanent residence is in this State. New York may have been defendant’s domicile at the time of his marriage and at the time the two New York houses were acquired by his wife. It has certainly ceased to be so since that time. Since defendant is, therefore, a nonresident of this State, it becomes necessary to determine whether this is a proper case for the dismissal of this action on a finding that New York is forum non conveniens.
Both parties to this action reside in France, where this very plaintiff is presently prosecuting an action against this very defendant on substantially the same facts as those upon which the instant action is based. The alleged contract was made in France. The alleged acts of performance by plaintiff took place in France and, to a lesser extent, in Saudi Arabia. The alleged breach occurred in France. The demand for performance was made in France.
The making of the Nice affidavit and the forwarding to the King of Saudi Arabia of a copy, charging that the contract, for which plaintiff claims compensation, was procured through bribery, took place in France and Saudi Arabia. These facts form the foundation for proposed affirmative defenses.
The law applicable to the plaintiff’s cause of action and the proposed defenses is the law of France. Some of the questions to be determined under French law are the effect of the alleged bribery, by which plaintiff claims the contract was procured, upon his right to recover compensation; the effect of plaintiff’s communication to the King of Saudi Arabia upon his right to enforce defendant’s alleged promise to pay him for his services; the necessity for a written promise of compensation, and the amount of damages to which plaintiff is entitled. Since France is a civil law jurisdiction, a trial here would require testimony of experts on French law, something which would be unnecessary if plaintiff’s claim were tried in France. Testimony of experts, particularly as to foreign civil law, is often contradictory and unsatisfactory, and a proper determination of the rights of the parties under foreign civil law is usually a difficult matter. No *241 such problem would be presented if plaintiff submitted his cause of action to a French court for decision.
All the possible witnesses on both sides reside in France, in Saudi Arabia, and elsewhere abroad. Not a single prospective witness resides in this country. Depositions on closed or even on open interrogatories are not nearly as desirable as the appearance of witnesses at the trial for direct and cross-examination. The witnesses who reside in Saudi Arabia spend a great deal of time in France. They would be likely to appear there to give testimony but it is much less probable that they would consent to come here to testify. The preparation of interrogatories and cross-interrogatories would be difficult and laborious. All the material documentary evidence is in France and in Saudi Arabia. This adds to the complications of preparing for trial and trying the case. The existence of material or necessary documents, which had been left abroad, may be revealed for the first time during the trial — too late to obtain them for use at the trial.
The difficulties confronting counsel in the preparation and trial of this action in the State of New York are aggravated by the fact that at least some of the witnesses do not speak and understand English well enough to dispense with the services of an interpreter. Plaintiff himself, for example, when examined before trial in the libel action which has since been discontinued, claimed that he needed the services of a Greek interpreter. The result was that each question had to be first stated in English and then translated into Greek, after which the answer, in Greek, had to be translated into English. Similarly, all documents had to be translated from English into Greek. Such language barriers would not be present to nearly the same extent if the case were tried in France. Plaintiff speaks and understands French, and so do many of the other witnesses. By reason of the language problem a trial here would be unduly prolonged and protracted, not to mention the expense of employing interpreters.
In addition to the great burden and expense to the parties and counsel which a trial here of a foreign cause of action would entail, there is the burden to our courts and the expense to this State which would result from accepting jurisdiction of this action. Pretrial motions and examinations would require a good deal of the court’s time, and the trial itself would probably be protracted and clog up our already congested calendars, at great public expense, with a lawsuit which has no nexus whatever with this State or any persons or property located in this State. *242 Obviously, this action is one which should have been brought in France and which does not belong here.
Plaintiff claims that the action presently pending against the defendant in Paris is essentially criminal in nature, and that he, therefore, may not ask or obtain, in that action, the damages which he seeks in the present action based upon the same alleged contract and the same alleged breach. The affidavits of experts on French law will conflict as to whether this contention of plaintiff is correct. It is unnecessary, however, to resolve this issue, for, even if it be assumed that plaintiff may not obtain damages in the pending French action, it is conceded that after its termination, he may bring an action in France to recover such damages. Since the making of this motion to dismiss, the French action has been dismissed. Plaintiff claims, nevertheless, that he has taken or will take an appeal, and that this appeal will delay the time when he will be free to sue defendant in France, for damages. This is, however, a situation of the plaintiff’s own making. He is free, at any time, to discontinue the appeal and, immediately thereafter, to commence an action in France for damages. In the circumstances, it is not correct to state that plaintiff is without present remedy in France, should this action be dismissed.
In the light of the foregoing, a proper case for invoking the doctrine of forum non conveniens is present here notwithstanding the fact that ‘‘ ‘ unless the balance is strongly in favor of the defendant, the plaintiff’s choice of forum should rarely be disturbed ’ ” (Bata v. Bata, 304 N. Y. 51, 56, supra). In Schlesinger v. Italian Line (278 App. Div. 127, supra) a resident of Louisiana sued the Italian Line for loss of baggage on one of defendant’s vessels, resulting from a fire in the Mediterranean Sea. Although the defendant had a regular terminus in New York, the holding (p. 130) was that the action, being between nonresidents on a contract made and breached elsewhere, should be dismissed because ‘ ‘ it appears that the ends of justice will be better served by a trial in another jurisdiction ”. Again in Central Pub. Co. v. Wittman (283 App. Div. 492, supra) a simple contract action between residents of Indiana, on a contract made and breached in Indiana, was dismissed under the doctrine of forum non conveniens. In that case, there were no such problems as are present here, viz., the need of experts’ testimony as to civil law, the remoteness of witnesses, language barriers, etc., and yet the action was dismissed. In De Sairigne v. Gould (83 F. Supp. 270, affd. 177 F. 2d 515, certiorari denied 339 U. S. 912) a resident of France sued a United States citizen, residing in France, for breach of a contract made in France, the court said *243 (83 F. Supp. 270, 272, supra): “ Plaintiff’s right of recovery is asserted to arise, not under the laws of the United States or of any State thereof, hut under the laws of France, which, as they are pleaded in the complaint, are quite different from, and inconsistent with, our laws. If any witnesses, other than the parties, are necessary, they would all seem to be residents of France, for the transaction complained of took place there. * * * If the case is tried in a French court, there will be no need of expert witnesses as to the French law, which will be necessary if the case is tried here. And defendant appears to have sufficient assets in France to meet any judgment which plaintiff may obtain. Under such circumstances, this court has the right to decline, and should decline, to entertain jurisdiction. ’ ’ In Universal Adjustment Corp. v. Midland Bank (281 Mass. 303, 313) the court used language which is very much in point here, “ Where it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary inconvenience and expense, and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action arose and where justice can be done, our courts decline to take jurisdiction on the general ground that the litigation may more appropriately be conducted in a foreign tribunal. Stated succinctly, the principle is that where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum. This is the doctrine of our own decisions. It prevails generally.”
That the court, as well as the parties, has an interest in whether it should accept litigation between nonresidents of foreign causes of actions is emphasized in Disconto Gesellschaft v. Umbreit (127 Wisc. 651, 662) “ To hold that two foreigners may import, bodily, a cause of action, and insist, as a matter of right, that taxpayers, citizens, and residents shall await the lagging steps of justice in the ante-room while the court hears and decides the foreign controversy, seems, on the face of it, to be unreasonable, if not absurd.”
A number of contentions made by plaintiff’s attorneys require brief comment. The statement that ‘ ‘ plaintiff would not receive equal and impartial justice were he compelled to try this case in France, and that the only forum where he could receive a fair trial upon the issues of this important litigation is in the *244 State of New York ” must be disregarded. Apart from the fact that there is no proof of this charge, it must be obvious that this court is in no position to hold that a fair trial may not be had in the courts of France. The attempt of plaintiff’s attorneys to condemn defendant’s activities in his relations with Saudi Arabia overlooks the fact that plaintiff himself, by his own admissions, sought to procure the contract for defendant and participated in the alleged briberies which he now criticizes. The claim that “ the declarations of defendant as to his domicile are not decisive as to his permanent residence in New York ” is perfectly true. This court' has, however, predicated its determination as to defendant’s residence not merely upon defendant’s declarations but upon the undenied facts as to the manner in which he and his family have lived for the last five years.
For the reasons indicated this motion, insofar as it seeks dismissal under the doctrine of forum non conveniens is granted. The motion is denied as academic, to the extent that it seeks dismissal for lack of jurisdiction of the subject matter. Settle order.